# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| ANTONIO CABALLERO, | § | |
| | § | |
| JUDGMENT CREDITOR & | § | |
| GARNISHOR, | § | |
| | § | |
| VS. | § | |
| | § | |
| FUERZAS ARMADAS | § | CASE NO. 4:21-CV-00140 |
| REVOLUCIONARIAS DE COLOMBIA | § | |
| a/k/a FARC-EP a/k/a | § | |
| REVOLUTIONARY ARMED FORCES | § | |
| OF COLOMBIA; and THE NORTE DEL | § | |
| VALLE CARTEL, | § | |
| | § | |
| JUDGMENT DEBTORS. | § | |
| | § | |
| VS. | § | |
| | § | |
| VITOL INC., | § | |
| | § | |
| GARNISHEE. | § | |

## GARNISHOR'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Judgment Creditor & Garnishor Antonio Caballero, by and through undersigned counsel, files this Motion for Partial Summary Judgment pursuant to Rule 56 of the FEDERAL RULES OF CIVIL PROCEDURE, respectfully showing the Court as follows:

## I. INTRODUCTION

1.      Garnishor, Antonio Caballero, ("Caballero") is a United States citizen who was forced to flee his native country of Colombia after a terrorist organization kidnapped, tortured and murdered his father, a former Colombian ambassador to the United Nations. He seeks to recover on a federal judgment rendered against that terrorist organization through this garnishment proceeding.

1

2.      All pleadings on file with this Court and all exhibits contained in the appendix filed herewith, which are true and correct copies of the originals, are incorporated herein by reference.

3.      There are no genuine issues of material fact in this case as to the matters on which Caballero seeks relief herein. Moreover, there is no factual or legal basis for the Third-Party Claim or Counterclaim filed by Vitol, Inc. ("Garnishee") because there are no conflicting claims to be litigated with regard to the debt it owes Rosneft Trading, S.A. ("Rosneft").

## II.  <u>STATEMENT OF THE ISSUES</u>

4.      This is a post-judgment writ of garnishment proceeding. The only question in such a case is whether the garnishee is indebted to the judgment debtor. *See* TEX. R. CIV. P. 668. If the garnishee says it is then the Court "shall render judgment for the plaintiff against the garnishee for the amount so admitted. . . ." *Id*. Thus, the only question here is whether the Garnishee is indebted in the amount of $12,661,259.98 to Rosneft, an entity that has been determined to be an "agent or instrumentality" of the judgment debtor Fuerzas Armadas Revolucionarias de Colombia ("FARC") under the TERRORISM RISK INSURANCE ACT of 2002 ("TRIA"). *See* Pub. L. No. 107-297, § 201(a), 116 STAT. 2322 (codified at 28 U.S.C. § 1610, Notes). Because Garnishee admits in its answer that it is indebted to Rosneft in the amount of $12,661,259.98, the Court is required by law to enter judgment in favor of Caballero for that amount as required by Rule 668 of the TEXAS RULES OF CIVIL PROCEDURE and Section 201(a) of TRIA.

5.      There are no other issues to be litigated. No other party has claimed an interest in the $12,661,259.98, and Rosneft has not appeared in the case.

## III.  <u>SUMMARY OF THE ARGUMENT</u>

6.      Caballero received a federal court judgment against FARC and another defendant under the Anti-Terrorism Act, 18 U.S.C. § 2333(e) ("ATA"), and Section 201(a) of TRIA in the amount of $46,729,667.00, plus post-judgment interest, which was trebled by the Court pursuant

to the ATA. Pl. Ex. 1, Final Judgment.  Section 201(a) of TRIA provides that a victim of terrorism who obtains a judgment against a terrorist party may attach assets that have been blocked by the U.S. Department of Treasury's Office of Foreign Asset Control ("OFAC"), and may recover the blocked assets through a garnishment or similar proceeding to apply towards satisfying the judgment, even if those blocked assets are putatively owed to a person who has been determined to be an agent or instrumentality of the terrorist party.

7.      OFAC blocked assets held by the Garnishee in the amount of $12,661,259.98 that were due and payable to Rosneft ("Blocked Funds"). Rosneft has been determined to be an "agent or instrumentality" of FARC pursuant to Section 201(a) of TRIA. Pl. Ex. 2, A&I Order. Assets blocked by OFAC may not be transferred to anyone without the proper license from OFAC, with an exception applicable here: blocked assets may be transferred to a TRIA judgment creditor upon entry of a final judgment ordering the garnishee to do so. *Harrison v. Republic of Sudan,* 855 F.3d 399, 408-409 (2d Cir. 2015) ("Once a district court determines that blocked assets are subject to the TRIA, those funds may be distributed without a license from OFAC."); *Weininger v. Castro*, 462 F. Supp. 2d 457, 499 (S.D.N.Y. 2006).

8.      Rule 69 of the FEDERAL RULES OF CIVIL PROCEDURE provides that state law remedies govern judgment collection activities. Caballero served a post-judgment writ of garnishment upon Garnishee to attach the Blocked Funds. Garnishee admits it owes the Blocked Funds to Rosneft. Garnishee Ans. at § 6 [Dkt. #7]. Rule 668 of the TEXAS RULES OF CIVIL PROCEDURE requires a court to render judgment in favor of the garnishor when the garnishee admits the funds are owed to the judgment debtor or, in this case, an agent or instrumentality of the judgment debtor as required by Section 201(a) of TRIA. Because Garnishee admits it is indebted to Rosneft, as an agent or instrumentality of the judgment debtor FARC, in the amount of $12,661,259.98, the Court must enter judgment in favor of Caballero by ordering Garnishee to turnover the Blocked Funds

to Caballero.

### IV. <u>PROCEDURAL HISTORY</u>

9.      On May 20, 2020, Chief Judge Michael K. Moore of the United States District Court for the Southern District of Florida ("S.D. Fla.") entered a final judgment in favor of Caballero against two terrorist organizations based in Colombia, FARC and Norte del Valle Cartel ("NDVC") (together, "Judgment Debtors"), in the amount of $46,729,667.00, which was trebled pursuant to 18 U.S.C. § 2333 ("Final Judgment"). Pl. Ex. 1, Final Judgment.

10.     Caballero registered the Final Judgment in Case No. 4:20-MC-02719; *Antonio Caballero v. Fuerzas Armadas Revolucionarias de Colombia, et al*; In the United States District Court for the Southern District of Texas, Houston Division on September 23, 2020. Pl. Ex. 3, Registration of Foreign Judgment in Federal Court.

11.     Caballero also registered the Final Judgment in Cause No. 20-09-11744 *Antonio Caballero v. Fuerzas Armadas Revolucionarias de Colombia, et al* with the 284th Judicial Court on September 28, 2020. Pl. Ex. 4, Registration of Judgment in Montgomery County District Court.

12.     On December 22, 2020, Caballero served a writ of garnishment on Garnishee. Pl. Ex. 5, Original Writ; [Dkt. #1-7 at pp. 59-65]. On December 29, 2020, Caballero served a corrected writ on Garnishee to address a clerical error in the original writ by correcting the name of FARC's agent or instrumentality, Rosneft, from "Rosneft, Inc." to "Rosneft Trading, S.A." Pl. Ex. 6, Corrected Writ; [Dkt. #5-2 at p. 66-67]. Contrary to Garnishee's assertions, both writs were served on Rosneft as permitted under Rule 21a of the TEXAS RULES OF CIVIL PROCEDURE upon Rosneft at what Garnishee says is Rosneft's principal place of business in Geneva, Switzerland. [Dkt. #1-7 at p. 56-58] and [Dkt #5-2 at p. 56-58.]

13.     Garnishee removed the case from state district court to this Court on January 15,

4

2021. On January 22, 2021 it filed its answer acknowledging that it is indebted to FARC's agent or instrumentality, Rosneft, in the amount of $12,661,259.98, which constitute the Blocked Funds.

## V.  <u>BACKGROUND FACTS</u>

14.    Caballero, his father, and his family owned and operated farms and properties in the central regions of Colombia, an area that happened to be strategically located along the drug trafficking route of the FARC and other terrorist organizations. *See* Pl. Ex. 7, Order on Motion for Default Final Judgment, D.E. 62 at 2, *Caballero v. FARC, et al.*, Case No. 18-CV-25337-KMM (S.D. Fla. May 20, 2020).   Caballero's father, "who was the former Ambassador to the United Nations, a leading politician, and an outspoken critic of narcotics traffickers in Colombia," was kidnapped "to send a message to other potentially uncooperative landowners in the region that resistance to the defendants' demand would not be tolerated and would result in them being targeted for kidnapping for ransom and/or assassination."[1] *Id*. After he was kidnapped, the ELN and FARC "abused and tortured Plaintiff's [Caballero's] father over a period of approximately six months before brutally murdering him." *Id*.

15.    After reviewing Caballero's complaint and evidence in the S.D. Fla. action, the Chief Judge entered the Final Judgment in favor of Caballero and against the FARC and NDVC. Pl. Ex. 1, Final Judgment. The Final Judgment was not appealed and is final, valid, subsisting and unpaid.

## III.  <u>ARGUMENT & AUTHORITIES</u>

### A.    APPLICABLE LAW & STANDARDS

### Summary Judgment Standard

16.    Summary judgment should be granted when "there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a).

---

[1] The reference to the "defendants" in the preceding sentence were the state-court defendants-the FARC, ELN, and NDVC.

The court must view the evidence in a light most favorable to the nonmovant, *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997), but the nonmovant's bare allegations are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In addition, conclusory allegations that are unsupported by specific facts will not prevent the granting of summary judgment. *National Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 713 (5th Cir. 1994).

17.     The movant initially bears the burden of presenting the basis for the motion and the elements of the causes of action upon which the nonmovant will be unable to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 411 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine issue for trial. *See* FED R. CIV. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A "dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (internal citation omitted).

**B.     COLLECTING JUDGMENTS UNDER THE ANTI-TERRORISM ACT & TERRORISM RISK INSURANCE ACT OF 2002**

18.     In post-judgment discovery efforts in the Florida Action, Caballero served a subpoena upon OFAC and learned in response to that subpoena that Garnishee is holding the Blocked Funds in the amount of $12,661,259.98 which are due and payable to Rosneft.

**The Terrorism Risk Insurance Act**

19.     In 2002, Congress enacted TRIA to govern certain post-judgment attachment proceedings for cases involving terrorist attacks. Congress sought to "deal comprehensively with the problem of enforcement of judgments issued to victims of terrorism in any U.S. court by enabling them to satisfy such judgments from the frozen assets of terrorist parties." 148 Cong. Rec. S11524, at S11528 (Nov. 19, 2002) (statement of Sen. Harkin). Ex. 10. Section 201(a) states:

> ***Notwithstanding any other provision of law***, and except as provided in
> subsection (b), in every case in which a person has obtained a judgment against
> a terrorist party on a claim based upon an act of terrorism, or for which a
> terrorist party is not immune under section 1605A or 1605(a)(7) . . . , the
> blocked assets of that terrorist party (***including the blocked assets of any
> agency or instrumentality of that terrorist party***) shall be subject to execution
> or attachment in aid of execution in order to satisfy such judgment to the extent
> of any compensatory damages for which such terrorist party has been adjudged
> liable.

TRIA § 201(a) (emphasis added). In other words, a terrorism victim holding an unsatisfied

judgment against a terrorist party can attach funds owed to an agent or instrumentality of the

terrorist party to satisfy the judgment, provided the following requirements are met: (i) the victim

"has obtained a judgment against a terrorist party," (ii) "the judgment is either (a) for a claim based

on an act of terrorism, or (b) for a claim for which a terrorist party is not immune under §

1605(a)(7)"; (iii) "the assets are 'blocked assets' within the meaning of TRIA (*Id*.); and (iv) the

"execution is sought only to the extent of any compensatory damages." *Weininger v. Castro*, 462

F. Supp. 2d 457, 479 (S.D.N.Y. 2006).

20.     Additionally, to collect a judgment from money owed to a terrorist party's "agency

or instrumentality," the victim "must further establish that the purported agency or instrumentality

is actually an agency or instrumentality." *Stansell v. Revolutionary Armed Forces of Columbia*

[sic], 771 F.3d 713, 723 (11th Cir. 2014). The agency or instrumentality standard was created to

reach beyond the terrorists' efforts to stay in the shadows by using "straw persons" or other layers

of affiliated companies and persons as fronts.  As the Eleventh Circuit put it:

> On the other hand, terrorist organizations such as FARC operate in the shadows
> out of necessity.  For example, a corporation organized under Florida law will
> almost certainly not list FARC as a shareholder of record. Instead, it will operate
> through layers of affiliated individuals and front companies.

*Stansell*, 771 F.3d at 732.

21.     The agent or instrumentality determination is one that must be made by a court.  To

that end, Caballero filed a motion in the Montgomery County State District Court case asking the

Court to determine whether Rosneft (among others) is an "agent or instrumentality" of the FARC. Attached to that motion were the original and supplemental sworn declarations of John Robert McBrien, the former the Associate Director for Global Targeting for OFAC at the time FARC and NVDC were placed on the Specially Designated Nationals List. Pl. Exs. 8 and 9.[2] The testimony contained in Mr. McBrien's declarations are incorporated herein by reference.

22.     After reviewing the extensive evidence submitted by Caballero in that case, including, without limitation, Mr. McBrien's declarations, the Court granted Caballero's motion and issued an order finding that Rosneft is indeed an agent or instrumentality of FARC. Pl. Ex. 2. Caballero asks the Court to take judicial notice of the Montgomery County State District Court's order under Rule 201 of the FEDERAL RULES OF CIVIL PROCEDURE and declare Rosneft an agent or instrumentality of FARC.

### C.     THE UNDISPUTED FACTS & APPLICABLE LAW DEMONSTRATE CABALLERO'S ENTITLEMENT TO SUMMARY JUDGMENT

23.     The only issue in a post-judgment garnishment proceeding is the question of whether the garnishee is indebted to the judgment debtor. *See* TEX. R. CIV. P. 668. If the garnishee answers that it is indebted to the judgment debtor then the Court "***shall render judgment*** for the plaintiff against the garnishee for the amount so admitted. . . ." *Id*. (emphasis added).

24.     Garnishee admits that it is indebted to Rosneft in the amount of $12,661,259.98 and owes the Blocked Funds to Rosneft. Garnishee Ans. at § 6. [Dkt. #7]. Because Garnishee has admitted to owing the $12,661,259.98 in Blocked Funds to Rosneft who has, in turn, been

---

[2] Caballero has attached Mr. McBrien's declarations to this motion so that the Court can see the testimony upon which the Montgomery County District Court relied in finding that Rosneft is an agent or instrumentality of FARC but, because (i) the agent or instrumentality has already been made and Caballero is asking the Court to take judicial notice of that determination (*see* Pl. Ex. 2); (ii) an independent agent or instrumentality determination by the Court is not necessary because such a determination has already been made; (iii) the record before the Court contains all the evidence needed to grant this motion, and (iv) the exhibits attached to Mr. McBrien's declarations are more than 600 pages in length, Caballero has omitted those exhibits from this motion.

determined to an agent or instrumentality of the FARC, the Court must enter summary judgment in favor of Caballero in the amount of $12,661,259.98 as required by Rule 668 of the TEXAS RULES OF CIVIL PROCEDURE and TRIA § 201(a), and order that the Blocked Funds be paid to Caballero as mandated by TRIA. *Harrison,* 855 F.3d at 408-09 ("Once a district court determines that blocked assets are subject to the TRIA, those funds may be distributed without a license from OFAC."); *Weininger*, 462 F. Supp. 2d at 499 (same).

### D. VITOL IS AUTHORIZED TO PAY THE BLOCKED FUNDS TO CABALLERO

25. Garnishee has argued in its answer that it cannot turn over the Blocked Funds to Caballero without an OFAC license, but black letter law is to the contrary. TRIA makes it abundantly clear that terrorism victims collecting judgments under TRIA do ***not*** need an OFAC license in order to obtain the turnover of assets blocked by OFAC under its various sanctions programs. *Harrison v. Republic of Sudan,* 855 F.3d 399, 408-09 (2d Cir. 2015) ("Once a district court determines that blocked assets are subject to the TRIA, those funds may be distributed without a license from OFAC."); *Weininger v. Castro*, 462 F. Supp. 2d 457, 499 (S.D.N.Y. 2006). Thus, this Court's entry of an order granting summary judgment and entry of a judgment ordering that Blocked Funds be turned over to Caballero as a judgment creditor under TRIA is sufficient.

### E. GARNISHEE IS NOT ENTITLED TO ANY PORTION OF THE BLOCKED FUNDS

26. As Garnishee acknowledges in ¶ 13 of its answer, the Blocked Funds cannot be transferred to anyone other than a person who has obtained the proper license from OFAC or a TRIA judgment creditor. Garnishee does not possess the required license from OFAC and is not a TRIA judgment creditor. It is not, consequently, entitled to receive any portion of the Blocked Funds in the form of attorney's fees or otherwise.

### F. GARNISHEE'S AFFIRMATIVE DEFENSES, COUNTERCLAIM AND THIRD-PARTY CLAIM ARE LEGALLY INSUFFICIENT OR MOOT

27.    In its answer, Garnishee pled five affirmative defenses, and a counterclaim/third-party complaint in interpleader seeking a determination of the rights of Caballero and Rosneft in the Blocked Funds. Nothing raised in the affirmative defenses, counterclaim and third-party claim precludes the entry of summary judgment in favor of Caballero, as summary judgment in favor of Caballero is mandated Rule 668 of the TEXAS RULES OF CIVIL PROCEDURE and TRIA § 201(a).

28.    Garnishee's affirmative defenses, counterclaim and third-party claim are superfluous. Garnishee lacks standing to raise the types of defenses it has raised here; the only question before the Court is whether Garnishee is indebted to the judgment, a fact that Garnishee has admitted.

29.    Garnishee's first affirmative defense is that the "Application fails to state a claim on which relief can be granted." Garnishee's bald assertion fails. It has not moved to dismiss, moved to strike, or provided any factual basis, evidence or legal argument in support of its first affirmative defense.

30.    Garnishee's second affirmative defense is that other persons may have interests or rights to the Blocked Funds, including the parties to or participants in the underlying transactions, or other judgment creditors who have served writs of garnishment.  Garnishee's assertion is pure speculation, and it has not identified any other judgment creditors who have served it with a writ, and there is no evidence that any third party has made a claim to the Blocked Funds. If even a third party had made such a claim, Garnishee's interpleading of the Blocked Funds would make its "defense" moot, as it would no longer be subjected to potential multiple liabilities.  And, OFAC has, in any event, blocked Rosneft or Garnishee from doing anything with regard to the Blocked Funds. In short, Garnishee's second affirmative defense fails as it is devoid of any factual allegations and merely provides boilerplate legal conclusions.

31.    Moreover, Garnishee cannot overcome the undisputed facts the Blocked Funds are

blocked by OFAC and unavailable to anyone, other than an ATA judgment holder such as Caballero, without an OFAC license.  TRIA is a terrorism victim recovery-maximation statute that was passed so that terrorism victims were no longer holding worthless "paper judgments." According to the legislative history, "[t]he purpose of Section 201 is to deal comprehensively with the problem of enforcement of judgments rendered on behalf of victims of terrorism in any court of competent jurisdiction by enabling them to satisfy such judgments through the attachment of blocked assets of terrorist parties.  It is the intent of the Conferees that Section 201 establish that such judgments *are to be enforced.*"  S11524, at S11528 (Nov. 19, 2002) (statement of Sen. Harkin). Ex. 10 (emphasis added). It is time to enforce Caballero's judgment against Blocked Assets in this jurisdiction of an agency or instrumentality of the FARC.

32.     Garnishee's third affirmative defense is no defense at all. It merely recites the black letter law that a victim of terrorism, such as Caballero, may recover the Blocked Funds by establishing his entitlement to turnover under TRIA as set forth in *Weininger v. Castro*, 462 F. Supp. 2d 457, 479 (S.D.N.Y. 2006).   As set forth above, Caballero has done so.

33.     Garnishee's fourth affirmative defense is that Caballero has failed to name as respondents certain unidentified indispensable parties. Once again, the affirmative defense is speculation that is unsupported by any facts or evidence and is therefore legally insufficient. Likewise, the affirmative defense fails as a matter of law. Caballero has complied with the procedure set forth in Texas garnishment law and provided notice to Rosneft of the proceedings. *See* ¶ 12, *infra*. Rosneft has chosen not to appear.  Caballero is not required to do anything more.

34.     Garnishee's fifth affirmative defense is (again) not an affirmative defense. Garnishee claims that if Rosneft appears and obtains a judicial determination that it is not an agency or instrumentality of the FARC, then the Blocked Funds cannot be turned over to Caballero.  Rosneft did not appear before the Texas state court to challenge the determination that

it is an agent and instrumentality of the FARC. Likewise, it has not appeared before this Court, and if it were to do so, would necessarily subject itself to the jurisdiction of this Court, including the obligation to appear for depositions and/or evidentiary hearings, if any, in Texas.

35.     Garnishee's Counterclaim and Third-Party Petition in Interpleader are moot and Caballero intends to move to dismiss both of them. The answer filed by Garnishee moots its counterclaim and third-party petition. In its answer, Garnishee admits that it owes the Blocked Funds to Rosneft. As discussed above, based on such admission, under Texas garnishment law judgment is now due and payable to Caballero. Tex. R. Civ. P. 668. This is a post-judgment proceeding where no other parties have appeared before the Texas state court or this Court, even though they have been served. Other than Garnishee, whose rights will be adjudicated by this matter, the only other party identified by Garnishee with an interest in the Blocked Funds is Rosneft. But Rosneft has not appeared. Thus, there is no need to start additional proceedings such as counterclaim or interpleader complaint when the existing proceedings have already adjudicated the interests of all involved.

## IV. <u>CONCLUSION</u>

36.     Garnishee owes to Rosneft the $12,661,259.98 in Blocked Funds which are the subject of Caballero's writ of garnishment. Rosneft is an agent or instrumentality of FARC. Pursuant to Rule 668 of the Texas Rules of Civil Procedure and TRIA § 201(a) the Court must grant summary judgment in favor of Caballero and enter judgment ordering Garnishee to pay the Blocked Funds to Caballero.

Judgment Creditor & Garnishor Antonio Caballero respectfully asks the Court to (i) grant this motion in its entirety, (ii) deny Garnishee's request to recover as attorney's fees or costs any portion of the Blocked Funds, (iii) enter judgment in favor of Caballero against Garnishee ordering that $12,661,259.98 be paid to Caballero within three business days after the date on which judgment is

entered, (iv) award to Caballero all attorney's fees and costs of court incurred herein and (v) grant to Caballero all other relief to which he may be entitled.

Respectfully Submitted,

/s/ *Hank Fasthoff*
Hank Fasthoff
FASTHOFF LAW FIRM PLLC
Texas Bar No. 24003510
Federal Bar No. 22959
21 Waterway Ave., Suite 300
The Woodlands, Texas 77380
 713.929.9314
hank@fasthofflawfirm.com



/s/ *Joseph Zumpano*
Joseph Zumpano
Florida Bar Number: 0056091
jzumpano@zplaw.com
(Admitted Pro Hac Vice)
Leon Patricios
Florida Bar Number: 0012777
lpatricios@zplaw.com
(Admitted Pro Hac Vice)
ZUMPANO PATRICIOS, P.A.
312 Minorca Avenue
Coral Gables, FL 33134
Telephone: (305) 444-5565

**Attorneys for Judgment Creditor**
**Antonio Caballero**


## CERTIFICATE OF SERVICE

I hereby certify that I served true and correct copies of the foregoing document upon all parties and counsel of record through the Court's electronic filing system on February 2, 2021.

/s/ Hank Fasthoff
Hank Fasthoff

13