| | |
|---|---|
| ANTONIO CABALLERO,<br><br>    *Judgment Creditor & Garnishor,*<br><br>v.<br><br>FUERZAS ARMADAS REVOLUCIONARIAS DE COLOMBIA a/k/a FARC-EP a/k/a REVOLUTIONARY ARMED FORCES OF COLOMBIA; and THE NORTE DEL VALLE CARTEL,<br><br>    *Judgment Debtors,*<br><br>v.<br><br>VITOL INC.,<br><br>    *Garnishee.*<br><br>_____<br><br>VITOL INC.,<br><br>    *Third-Party Petitioner,*<br><br>v.<br><br>ANTONIO CABALLERO; ROSNEFT TRADING S.A.; and LDC SUPPLY INTERNATIONAL, LLC,<br><br>    *Third-Party Respondents.* | CIVIL ACTION NO. 4:21-cv-00140 |

**THIRD-PARTY RESPONDENT ROSNEFT TRADING S.A.'s MOTION FOR JUDGMENT ON THE PLEADINGS**

**TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................1

II.     STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING .................2

III.    STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT ...........3

IV.     STATEMENT OF FACTS .................................................................................3

V.      ARGUMENT .....................................................................................................7

   A.   Summary of the Argument ...............................................................................7

   B.   The Writ of Garnishment Fails for Lack of Jurisdiction ................................8

     1.   The Writ Is Based on a Void Order .................................................................8

     2.   The Writ and All Necessary Accompanying Documents Were Never Properly Served on RTSA ....................................................................................10

   C.   The Pleadings Fail to State a Claim ...............................................................12

     1.   RTSA's Assets Are Beyond the Reach of the TRIA ....................................12

     2.   The Judgment-Debtor FARC No Longer Exists and Is Not Designated ...............19

VI.     PRAYER FOR RELIEF ..............................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amato v. Hernandez,*
    981 S.W.2d 947 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) .............................9, 10

*Babb v. Wilkie,*
    140 S. Ct. 1168 (2020)...................................................................................................14

*Calderon–Cardona v. Bank of N.Y. Mellon,*
    770 F.3d 993 (2d Cir. 2014).....................................................................................12, 13

*Calderon–Cardona v. JPMorgan Chase Bank, N.A.,*
    867 F. Supp. 2d 389 (S.D.N.Y. 2011)...........................................................................13

*Custom Corporates, Inc. v. Sec. Storage, Inc.,*
    207 S.W.3d 835 (Tex. App.—Houston [14th Dist.] 2006, no pet.) .................................9, 10

*In re Discount Rental, Inc.,*
    216 S.W.3d 831 (Tex. 2007)...........................................................................................10

*Dole Food Co. v. Patrickson,*
    538 U.S. 468 (2003) ......................................................................................................15

*Gentilello v. Rege,*
    627 F.3d 540 (5th Cir. 2010)...........................................................................................7

*In re Great Lakes Dredge & Dock Co. LLC,*
    624 F.3d 201 (5th Cir. 2010)...........................................................................................7

*Hardt v. Reliance Standard Life Ins. Co.,*
    560 U.S. 242 (2010) ......................................................................................................14

*Harrison v. Republic of Sudan,*
    No. 13-cv-3127, 2017 WL 946422 (S.D.N.Y. Feb. 10, 2017) ......................................15, 20

*Hebert Abstract Co., Inc. v. Touchstone Props., Ltd.,*
    914 F.2d 74 (5th Cir. 1990).........................................................................................5, 7

*Estate of Heiser v. Islamic Republic of Iran,*
    885 F. Supp. 2d 429 (D.D.C. 2012)..............................................................................8, 18

*Katz v. Bianchi,*
    848 S.W.2d 372 (Tex. App.—Houston [14th Dist.] 1993, no writ)....................................9

*King & King v. Porter,*
    252 S.W. 1022 (Tex. 1923)...........................................................................................10

*Kirschenbaum v. 650 Fifth Ave. & Related Properties,*
    830 F.3d 107 (2d Cir. 2016)..............................................................................15, 16, 17

*Kirschenbaum v. Assa Corp.*,
    934 F.3d 191 (2d Cir. 2019) ........................................................................................17

*Lease Fin. Grp., LLC v. Childers*,
    310 S.W.3d 120 (Tex. App.—Fort Worth 2010, no pet.) ............................................. 11, 12

*Lion Health Servs., Inc. v. Sebelius*,
    635 F.3d 693 (5th Cir. 2011) .......................................................................................14

*Owen Elec. Supply, Inc. v. Brite Day Constr., Inc.*,
    821 S.W.2d 283 (Tex. App.—Houston [1st Dist.] 1991, writ denied) ..................................9

*Peacock v. Thomas*,
    516 U.S. 349 (1996) .....................................................................................................9

*Pescatore v. Palmera Pineda*,
    No. 08-2245 (RMC), 2019 WL 2173835 (D.D.C. May 20, 2019) ......................................18

*Stansell v. FARC*,
    771 F.3d 713 (11th Cir. 2014) ..........................................................................8, 14, 17, 18

*Stansell v. FARC*,
    No. 19-20896-CV, 2020 WL 5547919 (S.D. Fla. Mar. 23, 2020) ......................................16

*Stansell v. FARC*,
    No. 8:09-cv-2308, 2013 WL 12156399 (M.D. Fla. Apr. 25, 2013) ....................................16

*Stewart v. USA Custom Paint & Body Shop, Inc.*,
    870 S.W.2d 18 (Tex. 1994) ............................................................................................9

*Strobach v. WesTex Cmty. Credit Union*,
    621 S.W.3d 856 (Tex. App.—El Paso 2021, pet. denied) ............................................ 9, 10

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.*,
    852 S.W.2d 440 (Tex. 1993) ..........................................................................................8

*United States v. Holy Land Found. for Relief & Dev.*,
    722 F.3d 677 (5th Cir. 2013) .......................................................................................15

*Van Duzer v. U.S. Bank Nat'l Ass'n*,
    995 F. Supp. 2d 673 (S.D. Tex. 2014) ...................................................................... 6, 7, 19

*Zeecon Wireless Internet, LLC v. Am. Bank of Tex., N.A.*,
    305 S.W.3d 813 (Tex. App.—Austin 2010, no pet.) .................................................... 10, 12

**Rules and Statutes**

8 U.S.C. § 1182 ..........................................................................................................12, 13

18 U.S.C. § 2333(e) .........................................................................................................8

28 U.S.C. § 1610 ..............................................................................................................2

50 U.S.C. § 1701 .........................................................................................................2, 17

50 U.S.C. § 4305(b) ...........................................................................................2

Fed. R. Civ. P. 12(b)(6) ......................................................................................7

Fed. R. Civ. P. 12(c) ...........................................................................................1

Fed. R. Civ. P. 21a ...........................................................................................11

Fed. R. Evid. 201 ...............................................................................................5

Terrorism Risk Insurance Act of 2002,
    Pub. L. No. 107–297 ..........................................................1, 2, 12, 13, 14, 17, 20

Tex. Civ. Prac. & Rem. Code § 63.001 ................................................................2

Tex. R. Civ. P. 658 .............................................................................................2

Tex. R. Civ. P. 663a ............................................................................... 2, 10, 11

**Other Authorities**

62 Fed. Reg. 52650 (Oct. 8, 1997) .....................................................................13

85 Fed. Reg. 10262 (Feb. 21, 2020) ..................................................................3, 5

86 Fed. Reg. 59024 (Oct. 26, 2021) .....................................................................5

86 Fed. Reg. 68293 (Dec. 1, 2021) ...................................................................6, 13

86 Fed. Reg. 68294 (Dec. 1, 2021) ...................................................................6, 13

86 Fed. Reg. 68295 (Dec. 1, 2021) ...................................................................6, 13

86 Fed. Reg. 69365 (Dec. 7, 2021) ......................................................................6

Christopher A. Casey et al., Cong. Rsch. Serv., R45618, *The International
    Emergency Economic Powers Act: Origins, Evolution, and Use* (2020),
    *available at* https://sgp.fas.org/crs/natsec/R45618.pdf .....................................17

*Embargo*, Black's Law Dictionary (11th ed. 2019) ............................................18

Exec. Order No. 13850, 83 Fed. Reg. 55243 (Nov. 2, 2018) .................................4

*FAQ Nos. 3, 11, 657*, Off. of Foreign Assets Control, U.S. Dep't of Treas.,
    https://home.treasury.gov/policy-issues/financial-sanctions/faqs/topic/1581 .........4

*Individuals and Entities Designated by the State Department Under E.O. 13224*,
    U.S. Dep't of State, https://2017-2021.state.gov/executive-order-
    13224/index.html#state ....................................................................................13

Press Release, U.S. Dep't of Treas., Treasury Targets Russian Oil Brokerage Firm
    for Supporting Illegitimate Maduro Regime (Feb. 18, 2020), *available at*
    https://home.treasury.gov/news/press-releases/sm909 ........................................5

Press Statement, Antony J. Blinken, Sec'y of State, U.S. Dep't of State,
　　Revocation of the Terrorist Designations of the Revolutionary Armed Forces
　　of Colombia (FARC) and Additional Terrorist Designations (Nov. 30, 2021),
　　https://www.state.gov/revocation-of-the-terrorist-designations-of-the-
　　revolutionary-armed-forces-of-colombia-farc-and-additional-terrorist-
　　designations ............................................................................................... 6, 13, 15, 19, 20

U.S. Const. art. VI, para. 2 ............................................................................................... 11

Third-Party Respondent Rosneft Trading S.A. ("RTSA") hereby moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), and in support shows as follows:

## I. INTRODUCTION

Plaintiff Antonio Caballero holds a $46 million default judgment against a party denominated "Fuerzas Armadas Revolucionarias de Colombia, a/k/a FARC-EP" (the "Revolutionary Armed Forces of Colombia" or "FARC"). Because Mr. Caballero has not been able to collect against the FARC, he has attempted to satisfy his judgment by launching a bevy of *ex parte* actions in federal and state courts across the country against any individual or entity he believes he can tie, however tangentially, to that group. One of that number was a collection action Mr. Caballero initiated against RTSA in Montgomery County, Texas (the "Registration Action"). Far from merely registering his judgment, Mr. Caballero asked the court *ex parte* to expand it to RTSA, months after it was finalized, by making a finding under federal law that RTSA's commercial dealings with the Venezuelan state oil company PDVSA rendered it an agent of Colombian terrorists. Without notice to RTSA, the Court in the Registration Action granted Mr. Caballero's request. Armed with that order, Mr. Caballero initiated the instant action (the "Attachment Action") in an effort to garnish RTSA's assets in Texas. Both actions are fatally flawed: the Court in the Registration Action was without jurisdiction to extend Plaintiff's long-final judgment against a Colombian terrorist group to a dormant, non-party Swiss corporation by issuing an order holding that, as a matter of federal law, the two could be treated as indistinguishable, and the voidness of that order infected all of the proceedings that followed.

Mr. Caballero has availed himself of two sets of laws: the federal Terrorism Risk Insurance Act (the "TRIA") and the State of Texas's post-judgment garnishment statutes. Those laws authorize the attachment of, and execution on, the property of a judgment debtor—or, as relevant

1

here, a non-party that is determined, as a matter of federal law, to be an agent of the debtor—for a claim based on an act of terrorism only when specific conditions are met. Among other things, the judgment debtor must be a "terrorist party" as defined in the TRIA; the property at issue must be blocked under one of two statutes named in the TRIA (the Trading with the Enemy Act ("TWEA"), 50 U.S.C. § 4305, or the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701); if the property belongs to a non-party, that non-party must be an "agency or instrumentality" of the terrorist party; and the ensuing form of process (*e.g.*, a writ of garnishment) must be based on a valid, subsisting judgment and served on the non-party in strict accordance with Texas law. *See* TRIA, Pub. L. No. 107–297, § 201(a), (d), 116 Stat. 2322, 2337, 2339–40 (codified as amended at 28 U.S.C. § 1610 note); Tex. Civ. Prac. & Rem. Code § 63.001; **Appx. A**, Tex. R. Civ. P. 658; **Appx. B**, Tex. R. Civ. P. 663a.

Under the TRIA, whether a party is an agency or instrumentality of a terrorist group is determined at the time that the property subject to collection is attached. Because the Registration Action and the Attachment Action are null and void under Texas law, RTSA's property was never attached. Additionally, the U.S. State Department has now determined that the exact group named in Mr. Caballero's judgment is no longer a designated terrorist organization. As a result, its property can no longer be attached under the TRIA, nor can the property of its purported agencies or instrumentalities. Therefore, even if Mr. Caballero could establish that RTSA was an agency or instrumentality of the FARC at the relevant time—and he cannot—its property cannot be attached in satisfaction of Mr. Caballero's judgment because the assets are beyond the reach of the TRIA.

## II.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

This action originated in the registration of a foreign judgment in the 284th District Court of Montgomery County (No. 20-12-11744). Two months after Plaintiff registered his judgment

against the FARC and the Norte del Valle Cartel on September 28, 2020, Plaintiff filed a pleading he styled a "Motion for Agency or Instrumentality Determination Pursuant to Section 201(a) of the [TRIA]." The court granted Plaintiff's motion *ex parte* on December 16, 2020. That same day, Plaintiff instituted a new action (No. 20-12-15427) and applied for a post-judgment writ of garnishment to Vitol Inc. ("Vitol") to attach assets belonging to RTSA. The court never acted on Plaintiff's application; rather, Plaintiff asked the clerk of court, by letter, to issue a writ of garnishment, and the clerk complied. Following service of the writ on Vitol, Vitol removed the action to this Court and asserted a third-party claim in interpleader against Plaintiff and RTSA. RTSA moved to dissolve the writ under Texas Rule of Civil Procedure 664a, and this Court denied the motion without prejudice. In a subsequent conference, this Court asked the parties whether briefing on the subjects of this motion might aid the Court in disposing of this action before the parties underwent costly discovery. RTSA and Vitol were in favor; Mr. Caballero was opposed.

## III.    STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT

This motion asks the Court to decide whether RTSA is entitled to judgment as a matter of law because the pleadings, documents attached to or referenced in the pleadings, and matters subject to judicial notice establish that the orders underlying this action are void for lack of jurisdiction and that RTSA's assets cannot be attached under the TRIA.

## IV.    STATEMENT OF FACTS

In February 2020, the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") designated RTSA a specially designated national ("SDN") and blocked its property in the United States pursuant to Executive Order 13850. *See* **Appx. C**, Notice of OFAC Sanctions Actions, 85 Fed. Reg. 10262, 10262–63 (Feb. 21, 2020). Issued in 2018, Executive Order 13850 blocked "[a]ll property and interests in property" in the United States or in "the possession or

control of any United States person" of "any person determined by the Secretary of the Treasury, in consultation with the Secretary of State," to operate in "any . . . sector of the Venezuelan economy determined by the Secretary of the Treasury, in consultation with the Secretary of State." **Appx. D**, Exec. Order No. 13850 § 1(a)(i), 83 Fed. Reg. 55243 (Nov. 2, 2018). By its terms, the order simply authorized the Secretary of the Treasury to make two "determin[ations]," in consultation with the Secretary of State, that would bring certain "persons" within the scope of U.S. sanctions: first, that a particular sector of the Venezuelan economy would be subject to sanctions; and second, that a particular person was operating in that sector. *See id.* The order's stated purpose was to address corruption and economic instability in Venezuela; it made no reference to narcotrafficking or to criminal activity elsewhere in Latin America. *See id.* (citing "actions by the Maduro regime and associated persons to plunder Venezuela's wealth for their own corrupt purposes, degrade Venezuela's infrastructure and natural environment through economic mismanagement and confiscatory mining and industrial practices, and catalyze a regional migration crisis by neglecting the basic needs of the Venezuelan people").

In addition, consistent with OFAC guidance, the order did not purport to restrict the commercial activity of non-U.S. persons that lacked any nexus to the United States. *See id.* at 55243–44.[1] Rather, as the designation itself indicated, the Secretary of the Treasury had made a determination that RTSA was "operating in the oil sector of the Venezuelan economy" in 2019 and 2020, and so was *subject to sanctions* as of February 2020. *See* **Appx. C**, 85 Fed. Reg. at

---

[1] *Accord* **Appx. E**, FAQ *Nos. 3 and 11*, Off. of Foreign Assets Control, U.S. Dep't of Treas., https://home.treasury.gov/policy-issues/financial-sanctions/faqs/search?faq-search=&field_topic_target_id=1501(explaining that "prohibited transactions" are those "in which U.S. persons may not engage" and that "U.S. persons," "persons and entities within the United States," "U.S. incorporated entities," "foreign subsidiaries owned or controlled by U.S. companies," and "foreign persons in possession of U.S.-origin goods" must comply with OFAC regulations); **Appx. F**, *FAQ No. 657*, Off. of Foreign Assets Control, U.S. Dep't of Treas., https://home.treasury.gov/policy-issues/financial-sanctions/faqs/topic/1581 (explaining that transactions with PDVSA "that involve U.S. persons or any other U.S. nexus" are prohibited under OFAC's Venezuela sanctions).

10262–63; *see also* **Appx. G**, Press Release, U.S. Dep't of Treas., *Treasury Targets Russian Oil Brokerage Firm for Supporting Illegitimate Maduro Regime* (Feb. 18, 2020), *available at* https://home.treasury.gov/news/press-releases/sm909. RTSA had not, in other words, violated any U.S. law by that date. Instead, the sanctions represented the *first* application of U.S. law to RTSA.

Citing the commercial dealings between RTSA and PDVSA in 2019 and 2020 referenced by the Secretary of the Treasury in OFAC's February 2020 press release, Mr. Caballero has asserted that RTSA is an agency or instrumentality of the FARC. Dkt. 1-4, at 16. According to PDVSA's publicly filed financial statements for the year ending December 31, 2016, which Mr. Caballero attached to the September 2020 declaration of his purported expert John McBrien, however, RTSA *prepaid* PDVSA approximately $2.5 billion in connection with contracts executed *in 2016* for the sale of crude oil and products to RTSA. *See* Dkt. 38-1, at 801, 835. Mr. Caballero's own pleadings therefore indicate that the oil brokerage transactions identified by OFAC have their origins in agreements signed—and paid for—years before President Trump issued Executive Order 13850 and OFAC designated PDVSA. Moreover, OFAC regulations make clear that RTSA was not alone in fulfilling commercial obligations to PDVSA in the wake of Executive Order 13850 and the designation of PDVSA; it was joined by a host of American and international oil companies. *See* **Appx. H**, Publication of Venezuela Web General License 8 and Subsequent Iterations, 86 Fed. Reg. 59024, 59025–29 (Oct. 26, 2021) (authorizing Chevron, Halliburton, Schlumberger, Baker Hughes, and Weatherford International to maintain operations and contracts involving PDVSA that were in effect prior to July 26, 2019, subject to specified exceptions).[2]

---

[2] RTSA respectfully requests that the Court take judicial notice of these and all public documents referenced herein pursuant to Federal Rule of Evidence 201. The Court properly may consider judicially noticed facts on a motion for judgment on the pleadings under Rule 12(c). *Hebert Abstract Co., Inc. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990). That includes matters of public record, such as pleadings and official government records. *Van Duzer v. U.S. Bank Nat'l Ass'n*, 995 F. Supp. 2d 673, 684 (S.D. Tex. 2014).

On December 1, 2021, the U.S. State Department revoked the FARC's designation as a terrorist organization. *See* **Appx. I**, In the Matter of the Designation of the Revolutionary Armed Forces of Colombia (FARC) (and Other Aliases) as a Foreign Terrorist Organization, 86 Fed. Reg. 68293, 68293 (Dec. 1, 2021) (revoking the FARC's designation as a Foreign Terrorist Organization under the INA); **Appx. J**, Revocation of the Designation of the Revolutionary Armed Forces of Colombia (FARC) (and Other Aliases) as a Specially Designated Global Terrorist, 86 Fed. Reg. 68295, 68295 (Dec. 1, 2021) (revoking the FARC's designation as a Specially Designated Global Terrorist under Executive Order 13224). By the Secretary's account, the decision was based on the FARC's demobilization in the wake of a historic ceasefire: "Following a 2016 Peace Accord with the Colombian government, the FARC formally dissolved and disarmed. It no longer exists as a unified organization that engages in terrorism or terrorist activity or has the capability or intent to do so." **Appx. K**, Press Statement, Antony J. Blinken, Sec'y of State, U.S. Dep't of State, Revocation of the Terrorist Designations of the Revolutionary Armed Forces of Colombia (FARC) and Additional Terrorist Designations (Nov. 30, 2021), https://www.state.gov/revocation-of-the-terrorist-designations-of-the-revolutionary-armed-forces-of-colombia-farc-and-additional-terrorist-designations. OFAC then removed the FARC from the SDN list and unblocked its property. *See* **Appx. L**, Notice of OFAC Sanctions Actions, 86 Fed. Reg. 69365, 69368 (Dec. 7, 2021). In its place, the State and Treasury Departments designated a group that dissented from the 2016 accord and operates under the former FARC name. *See* **Appx. M**, In the Matter of the Designation of Revolutionary Armed Forces of Colombia—People's Army (and Other Aliases) as a Foreign Terrorist Organization, 86 Fed. Reg. 68294, 68294 (Dec. 1, 2021) (designating the FARC—People's Army, also known as FARC-EP, also known as FARC-D, as a Foreign Terrorist Organization under the INA); **Appx. K** (identifying the dissenters as FARC-EP).

## V. ARGUMENT

### A.    <u>Summary of the Argument</u>

Motions for judgment on the pleadings under Rule 12(c) are analyzed using the same standard as motions to dismiss under Rule 12(b)(6). *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 209 (5th Cir. 2010). The pleadings must withstand plausibility review and cannot rely on "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Van Duzer*, 995 F. Supp. 2d at 684 (quoting *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010)). Rule 12(c) is "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert*, 914 F.2d at 76. To that end, the Court may consider the complaint, any documents attached to the complaint, any documents attached to the motion that are "central to the claim and referenced by the complaint," and matters subject to judicial notice. *Van Duzer*, 995 F. Supp. 2d at 684.

The pleadings in this case, including matters capable of judicial notice and this Court's ruling at the October 2021 hearing on the state court's authority to enter the order underlying Mr. Caballero's writ of garnishment, establish as a matter of law that RTSA's assets are not subject to attachment or execution under the TRIA or Texas law. Because the state court was without jurisdiction to enter the order finding RTSA to be an agency or instrumentality of the FARC, the order is a nullity and all subsequent process and proceedings—including the Attachment Action and the ensuing writ—are void. Even assuming, *arguendo*, that the court did have jurisdiction to issue that order, the Attachment Action still would fail because Mr. Caballero neglected to follow the strict notice and service requirements that Texas requires to obtain jurisdiction over the res in the first instance. Further, the pleadings foreclose relief under the TRIA: RTSA cannot plausibly or fairly be equated with the FARC, and because Mr. Caballero holds a judgment only against the FARC that has been de-designated, he cannot maintain this or any future action under the TRIA.

**B.**     **The Writ of Garnishment Fails for Lack of Jurisdiction**

**1.**     **The Writ Is Based on a Void Order**

This Court rendered an express ruling on the record at the hearing on RTSA's motion to dissolve the writ of garnishment that the state court exceeded its authority in issuing the order that supplied the exclusive predicate for the writ: "I will enter an order with regard to the state court judgment. I do think the state court had jurisdiction to recognize that the judgment out of Florida -- *I don't think she had the power or the ability to add to that judgment the way she did it.*" **Appx. N**, Oct. 7, 2021 Hr'g Tr. 59:25–60:5 (emphasis added). The Court's ruling recognizes that Mr. Caballero failed to carry his burden to establish the state court's subject matter jurisdiction to enter a post-judgment order with a substantive finding, under federal law, that a non-party was effectively an alter ego of one of the judgment debtors. *See* **Appx. O**, *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44, 446 (Tex. 1993) (subject matter jurisdiction "is never presumed and cannot be waived," and it is plaintiff's burden to "allege facts that affirmatively demonstrate the court's jurisdiction"). As RTSA explained in its Rule 664a motion, neither the TRIA nor any of the other authorities cited in Mr. Caballero's state court pleadings—the federal Anti-Terrorism Act of 2002 ("ATA"), the Texas Rules of Civil Procedure, the Texas Civil Practice and Remedies Code, and *Stansell v. FARC*, 771 F.3d 713 (11th Cir. 2014)—supplied that court with jurisdiction to enter the subject order, *see* Dkt. 31-1, ¶¶ 40–46, and Mr. Caballero's reliance on general principles of judgment enforcement and the presumption of concurrent state and federal jurisdiction could not bridge the gap, *see* Dkt. 64. ¶¶ 2–7. To the contrary, the federal statutes embody the uniquely federal interest in resolving claims arising from acts of international

terrorism,[3] and settled Texas law proscribes the use of post-judgment "enforcement" orders to materially vary the terms of judgments and impose obligations on non-parties.[4] The Court's ruling therefore confirms a foundational and incurable defect in the order at the heart of these proceedings: it is void. *See Custom Corporates*, 207 S.W.3d at 838 ("A court order is void if it is apparent that the court 'had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act.'").

A void judgment—and, by the same logic, a void order—cannot support a writ of garnishment. **Appx. Q**, *Amato v. Hernandez*, 981 S.W.2d 947, 950 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (directing trial court to set aside writ of garnishment based on judgment that was void for lack of personal jurisdiction); **Appx. R**, *Owen Elec. Supply, Inc. v. Brite Day Constr., Inc.*, 821 S.W.2d 283, 287 (Tex. App.—Houston [1st Dist.] 1991, writ denied) ("A judgment against a garnishee, entered in a garnishment proceeding, cannot stand when the underlying judgment has been set aside. A judgment that is nonexistent will not support a garnishment judgment."); *see also* **Appx. S**, *Stewart v. USA Custom Paint & Body Shop, Inc.*, 870 S.W.2d 18, 20 (Tex. 1994) (noting that garnishment proceedings may be defeated by a showing that the predicate judgment is nonexistent or void, and citing cases). "It is well-established that a 'void judgment is an absolute nullity and has no legal force or effect,' and that a void judgment

---

[3] *See* 18 U.S.C. § 2333(e) (mandating exclusive federal jurisdiction for claims under the Anti-Terrorism Act); *Estate of Heiser v. Islamic Republic of Iran*, 885 F. Supp. 2d 429, 444 (D.D.C. 2012) (holding that the TRIA "implicate[s] exclusively federal interests").

[4] *See Custom Corporates, Inc. v. Sec. Storage, Inc.*, 207 S.W.3d 835, 839–40 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (observing that "post-judgment orders may not require performance of obligations in addition to 'the obligations imposed by the final judgment,'" particularly "when such orders purport to adjudicate the rights of non-parties," nor may such orders "create or impose liability in a manner in which the original judgment had not"); **Appx. P**, *Katz v. Bianchi*, 848 S.W.2d 372, 374 (Tex. App.—Houston [14th Dist.] 1993, no writ) ("[E]nforcement orders may not be inconsistent with the original judgment and must not constitute a material change in substantial adjudicated portions of the judgment."). Federal law is wholly in accord. *See Peacock v. Thomas*, 516 U.S. 349, 355, 357–58 (1996) (explaining that federal ancillary jurisdiction does not extend to "a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment," but rather, there must be an "independent basis for jurisdiction," and holding that ancillary jurisdiction "could not properly be exercised" where the second action was founded on "different facts" and "entirely new theories of liability").

should therefore be treated as if it never came into being." *Strobach v. WesTex Cmty. Credit Union*, 621 S.W.3d 856, 875 (Tex. App.—El Paso 2021, pet. denied) (citations omitted). The order that this Court ruled to exceed the state court's "power or . . . ability," **Appx. N**, Oct. 7, 2021 Hr'g Tr. 60:3–5, expressly found that Mr. Caballero was "authorized to seek writs of garnishment" to attach RTSA's assets and further "authorized and directed" the clerk of court "to issue such writs in aid of garnishment," Dkt. 1-8, at ¶¶ 6–7. As that order is void, the ensuing writ is fatally defective. *See* **Appx. Q**, *Amato*, 981 S.W.2d at 950; *see also in re Discount Rental, Inc.*, 216 S.W.3d 831, 832 (Tex. 2007) ("[A]ny attempt, by process based upon [a] void judgment to reach [the judgment debtor's] property[,] is devoid of lawful authority." (alterations omitted)). Moreover, because a court's jurisdiction to issue a writ of garnishment derives from its jurisdiction over the original action, **Appx. T**, *King & King v. Porter*, 252 S.W. 1022, 1022 (Tex. 1923), the writ itself is void for lack of jurisdiction, *see Custom Corporates*, 207 S.W.3d at 838, and should be deemed never to have existed, *Strobach*, 621 S.W.3d at 875.

## 2. The Writ and All Necessary Accompanying Documents Were Never Properly Served on RTSA

Even if the writ had been based on a valid order, the state court still lacked jurisdiction because Mr. Caballero failed to properly serve RTSA. A garnishment proceeding is *quasi in rem*. *Zeecon Wireless Internet, LLC v. Am. Bank of Tex., N.A.*, 305 S.W.3d 813, 816 (Tex. App.—Austin 2010, no pet.). "In an *in rem* or *quasi in rem* action, a court has no authority to act unless it has acquired jurisdiction over the defendant's property, just as a court in an *in personam* action has no authority to act unless it has acquired jurisdiction over the defendant's person." *Id.* at 819. The exacting service requirements in Texas Rule of Civil Procedure 663a form an "essential part of acquiring jurisdiction over the res in a garnishment proceeding." *Id.* at 820. Rule 663a "requires that the judgment debtor be served with specified garnishment documents, and the service must be

carried out in a precise way," *id.* at 817, to wit: the judgment creditor must serve "a copy of the writ of garnishment, the application, accompanying affidavits and orders of the court" on the judgment debtor (or the non-party whose property is to be garnished, in RTSA's case), using "any manner prescribed for service of citation or as provided in Rule 21a," "as soon as practicable following the service of the writ" on the garnishee, **Appx. B**, Tex. R. Civ. P. 663a. "[F]ailure to properly serve [a] debtor" in "strict[] compl[iance]" with those rules, it follows, "deprive[s] the trial court of jurisdiction over the debtor's property—the res." *Zeecon*, 305 S.W.3d at 818, 819; *see also Lease Fin. Grp., LLC v. Childers*, 310 S.W.3d 120, 125–26 (Tex. App.—Fort Worth 2010, no pet.) ("'[N]o control or custody of [a judgment debtor's] property can be gained by his answer' without proper service of the writ. The creditor's failure to strictly comply with the pertinent rules 'is fatal to its judgment in the garnishment action.'" (citations omitted)). This is a fundamental defect in the proceedings that cannot be cured by actual knowledge or even a voluntary appearance on the part of the judgment debtor. *Lease Fin. Grp.*, 310 S.W.3d at 125.

The exhibits appended to Mr. Caballero's pleadings evince that Mr. Caballero sent an incomplete package of documents to RTSA via the U.S. Postal Service, *see* Dkt. 1-7, despite Switzerland's unequivocal objection to service by mail in an international treaty (the Hague Service Convention) deemed "the supreme Law of the Land," U.S. Const. art. VI, para. 2. Not only did Mr. Caballero omit the lone "order[] of the court" that purported to authorize the issuance of the writ, *see* Dkt. 1-7, but, because he elected to utilize standard international mail, his parcel was not even delivered to RTSA until January 18, 2021, *id.*—26 days after the writ was issued, 21 days after garnishee Vitol, Inc. was served with the writ, and the very day that Vitol's answer was due, Dkt. 1, ¶ 14; Dkt. 1-6. Nor, for that matter, did Mr. Caballero make any effort to comply with the Hague Service Convention. *See* Dkt. 1-7. Accordingly, Mr. Caballero did not "strictly comply"

with Rule 663a in terms of the method of service, the contents of the mailing, and the corresponding delay in apprising RTSA of the proceedings, and the state court never obtained jurisdiction over the res. *See Lease Fin. Grp.*, 310 S.W.3d at 127 (judgment creditor failed to prove that it served judgment debtor "as soon as practicable" where the judgment debtor had been served with a copy of the writ of garnishment twenty days after service on the garnishee and one day before the judgment in garnishment was signed); *Zeecon*, 305 S.W.3d at 815, 820 (judgment creditor's failure to properly serve judgment debtor with all documents listed in Rule 663a deprived the trial court of jurisdiction over the res and rendered garnishment judgment void).

C. **The Pleadings Fail to State a Claim**

1. **RTSA's Assets Are Beyond the Reach of the TRIA**

Separate and apart from the state court's lack of jurisdiction, judgment should be entered in favor of RTSA because the pleadings conclusively demonstrate that its property cannot be attached or executed on under the TRIA. The text of the TRIA is clear:

> Notwithstanding any other provision of law, . . . in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, . . . the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

TRIA § 201(a). The statute "unambiguously requires that there (1) be a judgment, (2) against a terrorist party, and (3) the claim underlying the judgment be based on an act of terrorism." *Calderon–Cardona v. Bank of N.Y. Mellon*, 770 F.3d 993, 999 (2d Cir. 2014). The TRIA defines "terrorist party" to mean, as relevant here, "a terrorist organization (as defined in section 212(a)(3)(B)(vi) of the Immigration and Nationality Act (8 U.S.C. § 1182(a)(3)(B)(vi)))." TRIA § 201(d)(4). The Immigration and Nationality Act ("INA"), in turn, defines "terrorist organization" to mean an organization: (I) "designated under section 1189 of this title" (*i.e.*, by the U.S. Secretary

of State); (II) "otherwise designated, upon publication in the Federal Register, by the Secretary of State in consultation with or upon the request of the Attorney General or the Secretary of Homeland Security, as a terrorist organization, after finding that the organization engages in the activities described in subclauses (I) through (VI) of clause (iv)"; or (III) "that is a group of two or more individuals, whether organized or not, which engages in, or has a subgroup which engages in, the activities described in subclauses (I) through (VI) of clause (iv)." 8 U.S.C. § 1182(a)(3)(B)(vi).

The Secretary of State designated the FARC as a Foreign Terrorist Organization under the INA in October 1997, **Appx. U**, Designation of Foreign Terrorist Organizations, 62 Fed. Reg. 52650, 52651 (Oct. 8, 1997), and as a Specially Designated Global Terrorist under Executive Order 13224 in October 2001, **Appx. V**, *Individuals and Entities Designated by the State Department Under E.O. 13224*, U.S. Dep't of State, https://2017-2021.state.gov/executive-order-13224/index.html#state (last visited Feb. 7, 2022). On December 1, 2021, however, the Secretary revoked both of those designations, *see* **Appx. I**, **J**, 86 Fed. Reg. at 68293, 68295, and in an accompanying statement pointed to the effect of the 2016 Peace Accord on the FARC's organizational status and capabilities, **Appx. K**—matters of historical fact that long predated Mr. Caballero's ATA judgment and his *ex parte* pleadings in state court portraying RTSA as a supporter of the group responsible for his father's murder.

The Executive Branch's action has divested the FARC of its status as a "terrorist party"—an essential prerequisite to attachment and execution under the TRIA. *See Calderon–Cardona*, 770 F.3d at 999. Because the TRIA's attachment provision uses the present tense—"the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) *shall be subject* to execution or attachment in aid of execution," TRIA § 201(a) (emphasis added)—the assets must belong to a "terrorist party" (or its agency or instrumentality) at the time

of turnover. *See Calderon–Cardona v. JPMorgan Chase Bank, N.A.*, 867 F. Supp. 2d 389, 396 (S.D.N.Y. 2011) ("[T]he most natural reading of TRIA § 201(a) is that it requires a judgment debtor to be a 'terrorist party' both at the time of the underlying judgment and at the time of the enforcement proceeding."), *aff'd in relevant part on other grounds, vacated in part, and remanded*, 770 F.3d 993. This is dispositive of the current proceedings: the original writ is a legal nullity, *see supra* Section V(A)–(B), and no writ can be issued under the TRIA now because the party against whom Mr. Caballero holds a judgment is not a "terrorist party," *see* TRIA § 201(a), (d)(4).

It is immaterial, for these purposes, that the FARC qualified as a "terrorist party" when Mr. Caballero obtained his default judgment under the ATA and registered that judgment in state court. The TRIA unequivocally permits attachment only as to the "blocked assets" of a "terrorist party" or an "agency or instrumentality of that terrorist party." TRIA § 201(a). "[W]here, as here, the words of a statute are unambiguous, the judicial inquiry is complete." *Babb v. Wilkie*, 140 S. Ct. 1168, 1177 (2020) (alterations and internal quotation marks omitted). The Court "must enforce plain and unambiguous statutory language according to its terms." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010). Although de-designation may not apply retroactively to the "blocked assets" element of a pending TRIA action, that owes to *OFAC regulations* that presumptively disclaim retroactive effect of a de-listing decision by the *Treasury Department. See Stansell*, 771 F.3d at 732–33 (citing 31 C.F.R. § 536.402). Setting aside the question of whether those regulations impermissibly conflict with an unambiguous statute, *see, e.g.*, *Lion Health Servs., Inc. v. Sebelius*, 635 F.3d 693, 699–700 (5th Cir. 2011), regulations issued by the *Treasury Department* have no bearing on a statutory element that Congress has entrusted solely to the *State Department*. As a matter of straightforward statutory interpretation, the State Department's de-designation of the FARC has placed the assets of that group *as it existed at the time of Mr.*

*Caballero's judgment* beyond the TRIA's ambit. Those assets may still be blocked by OFAC and may still be available to satisfy money judgments for acts of terrorism, but the TRIA is no longer a viable avenue to attach the assets of third parties based on any alleged tie to the historical FARC.

Moreover, the pleadings preclude any finding that RTSA is an "agency or instrumentality" of the FARC named in Mr. Caballero's judgment. To demonstrate that a non-party is an "agency or instrumentality" of a terrorist party within the meaning of the TRIA, a judgment creditor must prove that the non-party "(1) was a means through which a material function of the terrorist party is accomplished, (2) provided material services to, on behalf of, or in support of the terrorist party, or (3) was owned, controlled, or directed by the terrorist party." *Kirschenbaum v. 650 Fifth Ave. & Related Properties*, 830 F.3d 107, 136 (2d Cir. 2016) (emphasis omitted), *abrogated on other grounds by Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816 (2018). This determination is made as of the date the attachment proceedings were instituted. *Id.*; **Appx. W**, *Harrison v. Republic of Sudan*, No. 13-cv-3127, 2017 WL 946422, at *4 (S.D.N.Y. Feb. 10, 2017) (same); *see also United States v. Holy Land Found. for Relief & Dev.*, 722 F.3d 677, 687 (5th Cir. 2013) (blocked status of property under the TRIA is determined at the time attachment is sought); *cf. Dole Food Co. v. Patrickson*, 538 U.S. 468, 478–80 (2003) (instrumentality status under the Foreign Sovereign Immunities Act is determined at the time of filing, "consistent with the longstanding principle that the jurisdiction of the Court depends upon the state of things at the time of the action brought").

When Mr. Caballero registered his judgment in state court in September 2020, the FARC had long since "formally dissolved and disarmed," in the State Department's view. *See* **Appx. K**. This was also true as of the date of the transactions cited in OFAC's press release announcing RTSA's designation—and relied on by Mr. Caballero as the sole basis for his TRIA claim. *See* **Appx. G**. As a matter of law, then, RTSA could not be an "agency or instrumentality" of the FARC

that the court in Mr. Caballero's original lawsuit had adjudged liable for acts of terrorism. *See* **Appx. W**, *Harrison*, 2017 WL 946422, at *4–5 (awarding summary judgment to garnishee in TRIA action where bank undisputedly was an "agency or instrumentality" of a terrorist party when the subject assets were first blocked but, as of the inception of the suit, no longer held that status).

Contrary to Mr. Caballero's assertion at the January 2022 discovery conference, the relevant timeframe for measuring a non-party's "agency or instrumentality" status under the TRIA does not vary according to the judgment creditor's legal theory. *See* **Appx. X**, Jan. 11, 2022 Hr'g Tr. 12:10–14:7. The *Stansell* order affirmed by the Eleventh Circuit expressly framed its "agency or instrumentality" determination in terms of "the time [the writ] was ordered, issued, and served," **Appx. Y**, *Stansell v. FARC*, No. 8:09-cv-2308, 2013 WL 12156399, at *2 (M.D. Fla. Apr. 25, 2013), and Mr. Caballero's cherry-picked language from a more recent *Stansell* decision in the Southern District of Florida—"There is no 'temporal limitation' on providing assistance to terrorists at least in this Circuit"—still relies on a "standard that reaches 'past dealings with the FARC,'" which the record there repeatedly had borne out, **Appx. Z**, *Stansell v. FARC*, No. 19-20896-CV, 2020 WL 5547919, at *12–13 (S.D. Fla. Mar. 23, 2020). The Second Circuit in *Kirschenbaum* likewise applied a temporal limit to the "agency or instrumentality" determination, notwithstanding its use of the past tense in articulating the legal standard: the court there vacated summary judgment for the claimants, even though the record "demonstrate[d] as a matter of law" that the alleged "agency or instrumentality" had provided services to the terrorist party "through the time of filing the civil forfeiture complaint," because questions of fact remained as to whether it had done so with knowledge. *Kirschenbaum*, 830 F.3d at 136.

Indeed, the *Kirschenbaum* decision highlights a flaw in Mr. Caballero's interpretation of the TRIA standard: a party that was *ever* "owned, controlled, or directed" by a terrorist party

necessarily "was a means through which a material function of the terrorist party is accomplished" and "provided material services to, on behalf of, or in support of the terrorist party," yet the Second Circuit *still* found summary judgment unwarranted. *Id.* Further, if, as Mr. Caballero contends, the "ownership, control, or direction" prong were the only path to "agency or instrumentality" status subject to a temporal limit, it would be superfluous. After all, there would be no reason for a judgment creditor to use the "ownership, control, or direction" prong if the other prongs supplied the same coverage without any timing constraint. More troubling still, Mr. Caballero's position, if accepted, would render virtually every international oil company an "agency or instrumentality" of the FARC. As Mr. Caballero conceded at the October 2021 hearing, it is his contention that "*any company that has been helping PDVSA has been assisting FARC*" and abetting its money laundering, and this is true for any business undertaken since the Hugo Chávez era. **Appx. N**, Oct. 7, 2021 Hr'g Tr. 47:8–10, 48:2–8 (emphasis added). That is not, and cannot be, the law.[5]

OFAC sanctions are no answer. Under the TRIA, the "agency or instrumentality determination is separate from the blocked asset determination." *Stansell*, 771 F.3d at 731 n.13. "Blocked asset" is a defined term that refers to two statutory founts of Presidential authority for the seizure of property: the TWEA and the IEEPA. TRIA § 201(d)(2). As long as the property in question is blocked under one of these statutes—both of which vest the President with broad discretion and do not require any connection to terrorism—it qualifies as a "blocked asset." *See id.*; *see also* 50 U.S.C. §§ 1701–02, 4305(b). By Mr. Caballero's logic, then, if any company that has done business with PDVSA over the last 20 years is sanctioned *for any reason* pursuant to the

---

[5] Indeed, the Second Circuit has expressed concern about the breadth of the definition of "agency or instrumentality" laid out in *Kirschenbaum*, noting that, "if broadly construed," it could "invite lawsuits" against third parties that "had only incidental and perhaps unintentional involvement with a terrorist party." *Kirschenbaum v. Assa Corp.*, 934 F.3d 191, 199 (2d Cir. 2019).

TWEA or the IEEPA—and the possibilities are vast[6]—its assets may be attached under the TRIA to satisfy Mr. Caballero's judgment against the FARC. The repercussions of this theory can hardly be overstated. Beyond the disruptions to lawful commerce, the courts would be inappropriately dragged into sensitive matters of foreign affairs. *See Estate of Heiser*, 885 F. Supp. 2d at 440–41 (observing that "OFAC blocking regulations implicate a different set of interests than TRIA § 201," such that permitting attachment of blocked assets unconnected to a terrorist party "would actually reduce [that party's] liability" at the expense of "innocent property owners," and "hesitat[ing] to interpret TRIA § 201 broadly in light of the important role blocked assets play in foreign policy"). Further, and partly for these reasons, it is "improper" for a court to "rely solely on OFAC designation as creating an irrebuttable presumption of agency or instrumentality status." *Stansell*, 771 F.3d at 731 n.13; *accord* **Appx. AB**, *Pescatore v. Palmera Pineda*, No. 08-2245 (RMC), 2019 WL 2173835, at \*3 (D.D.C. May 20, 2019) (rejecting argument that OFAC designation is "itself enough to find Intervenors agencies or instrumentalities of FARC").

At root, though, that is precisely what Mr. Caballero urges. Indeed, Mr. Caballero's only grounds for distinguishing RTSA from every other international oil company that continued to trade with PDVSA after 2019 is the fact of its OFAC designation in February 2020, which, Mr. Caballero says, is proof that RTSA "violat[ed] the embargo" and "United States law." **Appx. N**, Oct. 7, 2021 Hr'g Tr. 46:2, 46:24–25. Setting aside the legal irrelevance of this proposition, Mr. Caballero is wrong on all counts. There was, and is, no embargo on Venezuela or PDVSA, let alone one that would reach a foreign corporation like RTSA. *See* **Appx. AC**, *Embargo*, Black's Law Dictionary (11th ed. 2019). Nor, for that matter, did RTSA violate any U.S. law in its dealings

---

[6] *See* **Appx. AA**, Christopher A. Casey et al., Cong. Rsch. Serv., R45618, *The International Emergency Economic Powers Act: Origins, Evolution, and Use*, at 17–27 (2020), *available at* https://sgp.fas.org/crs/natsec/R45618.pdf (recounting the history of the IEEPA and its use to address matters from cyber-attacks to illicit trade in diamonds).

with PDVSA. The U.S. sanctions on Venezuela and PDVSA as of 2019 in no way restricted the commercial activity of non-U.S. persons with no nexus to the United States. *See supra* Section IV. It is simply not the case, nor is it plausible to infer from the pleadings, that RTSA, a Swiss company owned by a Russian company, ran afoul of U.S. sanctions by performing longstanding contractual duties to a Venezuelan company entirely outside of the United States. The pleadings, in short, do not state a plausible claim for relief. *See Van Duzer*, 995 F. Supp. 2d at 683–85, 703.

## 2.    The Judgment-Debtor FARC No Longer Exists and Is Not Designated

Mr. Caballero's pleadings name a discrete iteration of the FARC: "Fuerzas Armadas Revolucionarias de Colombia a/k/a FARC-EP a/k/a Revolutionary Armed Forces of Colombia." *See, e.g.*, Dkt. 1-3, at 3–4, 50–51; Dkt. 1-4, at 5; Dkt. 1-6. That group, Mr. Caballero alleged, was responsible for the murder of his father in 1999 and could be held civilly liable in the U.S. for its crimes in 2014 and subjected to treble damages under the ATA in 2018. *See* Dkt. 19-1, Ex. 7, at 2. That same group, however, signed a peace accord in 2016 that, according to the State Department, fundamentally changed its orientation. *See* **Appx. K** (the FARC "formally dissolved and disarmed" under the accord and "no longer exists as a unified organization that engages in terrorism or terrorist activity or has the capability or intent to do so"). And, as noted above, that same group is no longer designated a terrorist organization by the State Department or the Treasury Department. *See supra* Sections IV, V(C)(1). These facts, which are cognizable under Rule 12(c), are dispositive of Mr. Caballero's claims under the TRIA. *See supra* Section V(C)(1).

Nevertheless, Mr. Caballero insists that the de-designation of the FARC is irrelevant to these proceedings for two reasons: first, he says, the de-designation was limited to "the political branch" of the FARC, and "the part that is running drugs" remains blocked; and second, the latter group "is known as the FARC-EP" and "we have a judgment against FARC and FARC-EP." **Appx. X**, Jan. 11, 2022 Hr'g Tr. 4:8–16. Again, Mr. Caballero is incorrect. Neither the de-

designation regulations nor the State Department's public statements make any reference to separate political and criminal branches of the FARC. To the contrary, those records make clear that the de-listed entity is the unitary, original FARC a/k/a FARC-EP, while the newly designated "FARC-EP" is a separate group that dissented from the 2016 Peace Accord and adopted the "FARC" or "FARC-EP" name. *See* **Appx. K** ("The designation of FARC-EP and Segunda Marquetalia is directed at those who refused to demobilize and those who are engaged in terrorist activity. . . . *Using the moniker of the former FARC* . . . , the Revolutionary Armed Forces of Colombia – People's Army (FARC-EP) is responsible for the vast majority of the armed attacks attributed to FARC dissident elements since 2019." (emphasis added)). Insofar as Mr. Caballero's judgment is against "FARC a/k/a FARC-EP," then, one of two things must be true: either Mr. Caballero holds a judgment against a group that formally laid down arms in 2016, or he holds a judgment against a group that did not exist at the time of his father's murder in 1999. Either way, that judgment cannot support the instant action. It is not against a "terrorist party" as defined in the TRIA, and RTSA cannot plausibly be deemed an agency or instrumentality of the named judgment debtor at the operative time as a matter of law. *See* TRIA § 201(a), (d)(4); **Appx. W**, *Harrison*, 2017 WL 946422, at *4.

In sum, RTSA is entitled to judgment on two independent grounds—lack of subject matter jurisdiction and failure to state a claim. Not only is the original writ void, it is unsupported by the pleadings, and no new writ can issue because the requisites of TRIA attachment no longer exist.

## VI.    PRAYER FOR RELIEF

RTSA respectfully requests that this Court grant this motion and enter an order dismissing this action with prejudice and, to the extent that the Court does not expressly find the order in the Registration Action and the writ in the Attachment Action to be void, dissolving same.

Dated:     February 23, 2022          NORTON ROSE FULBRIGHT US LLP
          Austin, Texas

          By: */s/ Mark Oakes*
              Mark Oakes
              98 San Jacinto Boulevard, Suite 1100
              Austin, Texas 78701-4255
              Tel.: (512) 474-5201
              Fax: (512) 536-4598
              mark.oakes@nortonrosefulbright.com

              Steve Dollar
              1301 Avenue of the Americas
              New York, New York 10019
              Tel.: (212) 318-3000
              Fax: (212) 318-3400
              steve.dollar@nortonrosefulbright.com
              *Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I certify that on February 23, 2022, this document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

NORTON ROSE FULBRIGHT US LLP

By: */s/ Mark Oakes*
       Mark Oakes
       98 San Jacinto Boulevard, Suite 1100
       Austin, Texas 78701-4255
       Tel.: 512.474.5201
       Fax: 512.536.4598
       mark.oakes@nortonrosefulbright.com

*Attorney for Third-Party Respondent Rosneft Trading S.A.*

## CERTIFICATE OF CONFERENCE

I certify that on February 22, 2022, counsel for Rosneft Trading S.A. conferred separately via telephone with counsel for Vitol, Inc., and counsel for Antonio Caballero, and laid out the bases of this motion to both parties. Vitol does not oppose this motion. Mr. Caballero opposes this motion.

NORTON ROSE FULBRIGHT US LLP

By: */s/ Mark Oakes*
       Mark Oakes
       98 San Jacinto Boulevard, Suite 1100
       Austin, Texas 78701-4255
       Tel.: 512.474.5201
       Fax: 512.536.4598
       mark.oakes@nortonrosefulbright.com

*Attorney for Third-Party Respondent Rosneft Trading S.A.*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| ANTONIO CABALLERO,<br><br>     *Judgment Creditor & Garnishor,*<br><br>v.<br><br>FUERZAS ARMADAS REVOLUCIONARIAS DE COLOMBIA a/k/a FARC-EP a/k/a REVOLUTIONARY ARMED FORCES OF COLOMBIA; and THE NORTE DEL VALLE CARTEL,<br><br>     *Judgment Debtors,*<br><br>v.<br><br>VITOL INC.,<br><br>     *Garnishee.*<br><br>────────────────────<br><br>VITOL INC.,<br><br>     *Third-Party Petitioner.*<br><br>v.<br><br>ANTONIO CABALLERO; ROSNEFT TRADING S.A.; and LDC SUPPLY INTERNATIONAL, LLC,<br><br>     *Third-Party Respondents.* | CIVIL ACTION NO. 4:21-cv-00140 |

## ORDER GRANTING JUDGMENT ON THE PLEADINGS

This Court, having considered Third-Party Respondent Rosneft Trading S.A.'s Motion for Judgment on the Pleadings, and arguments of counsel, is of the opinion that the Motion should be GRANTED. It is therefore ORDERED that:

This action is DISMISSED WITH PREJUDICE.

It is further ORDERED that the Writ of Garnishment issued on December 23, 2020 is DISSOLVED.

It is further ORDERED that the Order of December 16, 2020 directing the issuance of the above Writ of Garnishment is VACATED.

SIGNED this _____ day of _____, 2022.

_____
Hon. Andrew S. Hanen
United States District Judge