United States District Court
Southern District of Texas
**ENTERED**
January 06, 2023
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| ANTONIO CABALLERO, <br><br> *Judgment Creditor & Garnishor,* <br><br> v. <br><br> FUERZAS ARMADAS REVOLUCIONARIAS DE COLOMBIA a/k/a FARC-EP a/k/a REVOLUTIONARY ARMED FORCES OF COLOMBIA; and THE NORTE DEL VALLE CARTEL, <br><br> *Judgment Debtors,* <br><br> v. <br><br> VITOL INC., <br><br> *Garnishee.* | CIVIL ACTION NO. 4:21-cv-00140 |
| VITOL INC., <br><br> *Third-Party Petitioner.* <br><br> v. <br><br> ANTONIO CABALLERO; ROSNEFT TRADING S.A.; and LDC SUPPLY INTERNATIONAL, LLC, <br><br> *Third-Party Respondents.* | |

## ORDER

Pending before the Court is Third-Party Respondent Rosneft Trading S.A.'s ("RTSA")

Motion for Judgment on the Pleadings. (Doc. No. 82). Plaintiff Antonio Caballero ("Caballero" or

"Plaintiff") responded and RTSA replied. (Doc. Nos. 90, 91). After considering the applicable law,

the record, and the extensive briefing, the Court hereby **GRANTS** RTSA's Motion.

1

## I.     Background

### A.     The Final Judgment in Florida

This case arises from a final default judgment Plaintiff obtained in the United States District Court for the Southern District of Florida and the validity of his subsequent efforts to satisfy it here in Texas. Plaintiff initially brought an action in the Southern District of Florida seeking damages under the Anti-Terrorism Act ("ATA") that was enacted by Congress to create a "comprehensive process to facilitate the resolution of anti-terrorism claims." *See* 18 U.S.C. § 2333. In the Florida action, Caballero alleged that his father and family owned and operated farms and properties in an area of Colombia located near a drug trafficking route of Fuerzas Armadas Revolucionarias de Colombia ("FARC") and Norte del Valle Cartel ("NdVC") (collectively, "Original Defendants"). (Doc. No. 1 at 1-2). *See Antonio Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, 2020 WL 7481302 (S.D. Fla. 2020). According to the complaint, Plaintiff's father was kidnapped, tortured for six months, and then murdered by FARC. *Id.*

Plaintiff obtained a final judgment from the Southern District of Florida in 2020. *Id.* In this default judgment, the court found that Plaintiff was entitled to recover damages pursuant to the ATA and awarded Plaintiff $45,000,000.00 in actual, compensatory, non-economic damages and $1,729,667.00 of actual, compensatory, economic damages. *Id.* In this order, the court did not assess these damages against any specific party. No appeal was undertaken, and the judgment became final.

### B.     The Registration Action

Plaintiff then sought to enforce this judgment in Texas. He filed an action to register the judgment issued by the Southern District of Florida in the 284th Judicial District Court of Montgomery County, Texas ("Registration Action"). That case was styled *Antonio Caballero v. Fuerzas Armadas Revolucionarias de Colombia, et al.*, Cause Number 20-09-11744. This lawsuit

was filed on September 28, 2020. The only "parties" to the Registration Action were the Plaintiff and Original Defendants. It is unclear what notice the Original Defendants were given. In addition to the earlier filed "judgment" and related pleadings, on November 25, 2020, Plaintiff filed a Motion for Agency or Instrumentality Determination Pursuant to § 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA"). *Id.* In that Motion, Plaintiff requested the state district court determine *ex parte* whether RTSA, among other entities, was an "agency or instrumentality" of FARC, as that phrase is used in the TRIA.

Under the relevant provisions of the TRIA, victims of terrorism can recover compensatory damages from *blocked assets*, not only from the terrorist organization itself, but also from its *agents and instrumentalities* if the victim has obtained a judgment against a terrorist party on a claim based upon an act of terrorism. 28 U.S.C. § 1610. That section of the TRIA, as quoted below, also allows successful victims to attach assets that have been blocked by the United States Department of Treasury's Office of Foreign Asset Control ("OFAC") through garnishment or other collection methods. OFAC maintains the Specially Designated Nationals and Blocked Persons List, which designates various individuals, groups, and entities owned or controlled by, acting for or on behalf of, targeted countries. It also lists individuals and entities, such as terrorists and narcotics traffickers, who are designated under programs that are not country specific. Collectively, these individuals and companies are referred to as Specially Designated Nationals ("SDNs"). SDNs' assets are "blocked" as a result of OFAC's designation.

Section 201(a) of the TRIA states:

> Notwithstanding any other provision of law, and except as provided in subsection (b), **in every case in which a person has obtained a judgment against a terrorist party** on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605A or 1605(a)(7) . . . , **the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy**

**such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.**

TRIA § 201(a), codified at 28 U.S.C. § 1610 note (emphasis added).

A plaintiff must meet four requirements under the TRIA to collect unfulfilled judgments: (1) the victim must have obtained a judgment against a terrorist party, (2) the judgment must be for a claim based upon an act of terrorism or for a claim for which a terrorist is not immune, (3) the assets must be "blocked assets" within the meaning of TRIA, and (4) the execution can only be pursued to the extent of any compensatory damages. *Weininger v. Castro*, 462 F.Supp.2d 457, 479 (S.D.N.Y. 2006).

Instead of just registering the judgment and then pursuing the assets of the Original Defendants, Plaintiff asked in his *ex parte* Motion for Agency or Instrumentality Determination for the state court to find that RTSA,[1] Petroleos de Venezuela, S.A. ("PDVSA"), the Venezuelan state-owned oil company, and Kaibab International Corp. were agents or instrumentalities of FARC. (Doc. No. 1-4 at 9). Such a finding would enable Plaintiff to pursue their assets in addition to those of the Original Defendants. RTSA, PDVSA, and Kaibab International were not named as parties in the Registration Action or served in any fashion with the Motion.

As illustrated below, Plaintiff initially drew the alleged link between RTSA and FARC through PDVSA and ultimately through one of its subsidiaries. In his Motion, Plaintiff argued that because two federal judges from the Southern District of Florida[2] had found Petrocedeño, S.A.

---

[1] According to the pleadings, RTSA is a Swiss-incorporated oil trading company and a subsidiary of Rosneft Oil Company, one of the world's largest publicly traded petroleum companies. (Doc. No. 61 at 11). Rosneft Oil Company's largest shareholders include the Government of the Russian Federation (through JC Rosneftegaz) and British Petroleum. (*Id.*). From 2011, when RTSA was formed, until it ceased its operations in April 2020, RTSA was charged with managing Rosneft Oil Company's international trading activities and conducted international marketing and distribution activities including trading, processing, and transport of raw materials. (*Id.*).

[2] Plaintiff references two separate cases from the Southern District of Florida, Cause No. 1:19-cv-20896 (*Stansell, et al. v. Revolutionary Armed Forces of Columbia*) and Cause No. 1:10-cv-21517 (*John Doe v. Ejercito de Liberacion Nacional & FARC v. SSM Petcoke*) in its Motion for Agency or Instrumentality Determination in the Registration Action. In each case, the respective court found Petrocedeño to be an agency or instrumentality of FARC. Plaintiff, however, does not prominently mention these findings from the Southern District of Florida in subsequent filings. For example, Plaintiff omits any mention of the findings in his Application for Post-Judgment Writ of Garnishment in the

4

("Petrocedeño"), a subsidiary of PDVSA, an agent or instrumentality of FARC, PDVSA, as the

parent, should also be found an agent or instrumentality of FARC. In support, Plaintiff cited the

affidavit of John McBrien, a former OFAC employee who opined that PDVSA and RTSA were

agents or instrumentalities of FARC. (*Id.* at 11, 16). Based upon these contentions, Plaintiff then

argued that OFAC had designated RTSA as an SDN because of its involvement with "a large

percentage of Venezuelan oil exports in 2019." (*Id.* at 16). Furthermore, Plaintiff alleged that since

RTSA had previously conducted business with PDVSA and since PDVSA was the parent of a

company who had been found to be an agent or instrumentality of FARC, and since its assets were

blocked because of its OFAC designation as an SDN, RTSA was an agent or instrumentality of

FARC under TRIA. (*Id.* at 16-17). The diagram below illustrates how Plaintiff constructed the

alleged link between FARC and RTSA in its Motion. Based upon these contentions, the Texas

state court granted Plaintiff's Motion.



---

Attachment Action. (Doc. No. 1-3). Instead, in that pleading, Plaintiff relied upon two cases from the Southern District of New York, Cause No. 1:18-mc-00545 (*Pescatore, et al. v. Juvenal Ovidio Ricardo Palmera Pineda, et al.*) and Cause No. 1:16-mc-00405 (*Stansell, et al. v. FARC*), which found Petrocedeño to be an agency or instrumentality of FARC.

Plaintiff successfully alleged that he was entitled to an *ex parte* "agent or instrumentality" determination by the court without notice to RTSA. Specifically, Plaintiff contended that the Eleventh Circuit had held that alleged agents or instrumentalities were not entitled to a hearing or even notice before the issuance of a writ of attachment. *Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 729 (11th Cir. 2014) ("*Stansell I*"). This Court is not convinced *Stansell I* can be read to be a blanket approval of this procedure. Regardless, according to Plaintiff's reasoning, RTSA was only entitled to notice and a hearing before execution, but not before it was declared an agent or instrumentality or even before attachment, because it might move the asset outside the reach of a court, or the asset may become unreachable either by government action or seizure.[3] *Id.* A critical part of the court's holding in *Stansell I* was actually based on its finding that the claimants had "received actual notice and appeared" and had been "afforded an opportunity to be heard" to satisfy due process. *Id.* at 741.

Based on the allegations set forth in Plaintiff's Motion—and without notice to RTSA or giving it an opportunity to be heard—the state court in the Registration Action granted Plaintiff's Motion. The state court's order, signed on December 16, 2020, also granted Plaintiff the ability to seek writs of garnishment to attach RTSA's assets.

## C. The Attachment Action

That same day, presumably after having obtained the finding of agency and instrumentality in the Registration Action, Plaintiff initiated a different lawsuit in the underlying state court. He did so by filing an Application for Post-Judgment Writ of Garnishment seeking assets to satisfy the outstanding balance of his Florida compensatory damages award, which he estimates to be $41,734,153.93. *See Antonio Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, Cause

---

[3] On the one hand, this reasoning is certainly understandable. On the other hand, this reasoning might be characterized as the ultimate in bootstrapping arguments. Companies that heretofore have not been found to be agents or instrumentalities are not entitled to notice of a motion that seeks an order finding them to be agents or instrumentalities because they are agents or instrumentalities.

No. 20-12-15427 in the 284th Judicial District Court of Montgomery County, Texas ("Attachment Action"); (Doc. No. 1-3). Presumably, the primary purpose of this lawsuit was to seize the assets of RTSA that were located in an account held by Vitol, Inc. ("Vitol" or "Garnishee"). As defendants, Plaintiff named only FARC and NdVC, the alleged terrorist groups and Original Defendants, and Vitol as Garnishee. Plaintiff alleged that Vitol, a banking and financial institution, held certain blocked assets of RTSA totaling $12,661,259.98. (Doc. No. 1-3 at 4). The district clerk proceeded entirely *ex parte* and without notice to Vitol or RTSA. On December 18, 2020, the clerk of the state court entered a writ of garnishment after judgment pursuant to Plaintiff's Application.[4] It was on this basis that Plaintiff obtained a writ of garnishment against Vitol that effectively attached RTSA's assets that were in its Vitol account. Eventually, Vitol was served with a writ of garnishment after judgment and Plaintiff's application for the writ on December 22, 2020. (Doc. No. 1-7 at 63). As Garnishee, Vitol then removed the Attachment Action to this Court and filed a counterclaim and third-party petition in interpleader against RTSA. (*See* Doc. No. 7). RTSA was "served" on February 5, 2021, and returned an executed waiver of formal service on February 11, 2021. (Doc. No. 27).

### D.    Proceedings in Federal Court

Since removal to federal court, this Court has denied Plaintiff's Motion for Partial Summary Judgment (Doc. No. 19) and Motion to Dismiss Counterclaim and Third-Party Petition in Interpleader (Doc. No. 37). The Court also considered RTSA's Motion to Dissolve (Doc. No. 61) in a hearing with the parties.[5]

Following the hearing, the parties were ordered to confer and propose to the Court a

---

[4] The original writ apparently misnamed RTSA. A second, corrected writ of garnishment after judgment was issued by the clerk on December 23, 2020, because of this clerical error. (Doc. No. 1-6). This second, corrected writ of garnishment was served on Vitol on December 29, 2020. (Doc. No. 19-1 at 33).
[5] To the extent there is any ambiguity as to the status of the Motion to Dissolve (Doc. No. 61), it was denied during the hearing on October 7, 2021, but the ruling was not with prejudice to the position of any party. (Minute Entry from October 7, 2021).

schedule to resolve the outstanding issues in this matter. Eventually, RTSA filed this Motion for

Judgment on the Pleadings. (Doc. No 82). In its Motion, RTSA brings procedural and substantive

challenges to the state court's actions and seeks to have Plaintiff's entire lawsuit dismissed with

prejudice. It also pleads for the Court to dissolve the state court's order in the Registration Action,

and to find the writ of garnishment issued in the Attachment Action void.

Among other contentions, RTSA argues that the writ is invalid because the state court in

the Registration Action lacked jurisdiction to extend Plaintiff's final judgment from Florida against

RTSA. Procedurally, RTSA argues that even if the initial registration was valid, the state court still

lacked jurisdiction or at least the writ should be dissolved because in the Attachment Action the

Plaintiff failed to properly follow the requirements of Texas Rules of Civil Procedure. RTSA

further contends that Plaintiff fails to state a claim under Rule 12(c) because: (1) RTSA's assets

are beyond the reach of TRIA; (2) FARC no longer exists; and (3) FARC is no longer designated

as a terrorist organization by the State Department or Treasury Department.[6] Plaintiff has

responded in opposition and RTSA has replied in support of its motion. (Doc. Nos. 90, 91).

## II.     Legal Standard

A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard

as a motion to dismiss under Rule 12(b)(6). *Gentilello v. Rege*, 627 F.3d 540, 544-545 (5th Cir.

2010). A defendant may file a motion to dismiss a complaint for "failure to state a claim upon

which relief may be granted." FED. R. CIV. P. 12(b)(6). To defeat a motion to dismiss under Rule

12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[6] The Court will not be addressing these latter arguments in this Order because they involve a more detailed analysis of facts best done in response to full briefings either in a Rule 56 context or in the context of an evidentiary hearing or jury trial.

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, a court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). A court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

### III.   Analysis

#### A.   The Registration Action

1. <u>Exclusive Federal Jurisdiction?</u>

RTSA argues that the writ of garnishment after judgment fails due to lack of jurisdiction because it is based on a void order from the Registration Action.[7] (Doc. No. 82 at 14). Specifically, RTSA contends that since the TRIA embodies a "uniquely federal interest in resolving claims arising from acts of international terrorism," the state court lacked subject matter jurisdiction in the Registration Action to hold that, as a matter of federal law, RTSA was an agent or

---

[7] Although RTSA claims that this Court "rendered an express ruling on the record" at the hearing on RTSA's Motion to Dissolve the Writ of Garnishment, that is not the case. (Doc. No. 82 at 14). The Court's statement that "I don't think she had the power or ability to add to that judgment the way she did it" was a statement of doubt over the validity of the state court's actions in issuing the order in the Registration Action, not an explicit ruling; nor was it a ruling on that court's jurisdiction. (Doc. No. 95, Transcript of Motion Hearing, October 7, 2021, 59:25-60:5). That is one of the reasons the Court sought additional briefing from the parties.

instrumentality of FARC under the TRIA. (*Id.*) (citing *Estate of Heiser v. Islamic Republic of Iran*, 885 F.Supp.2d 429, 444 (D.D.C. 2012)).

In response, Plaintiff contends that the text of the TRIA does not limit agency or instrumentality determinations to federal courts. (Doc. 62 at 10, incorporated by reference at Doc. No. 90 at 7-8). Since Texas district courts are courts of general jurisdiction, Plaintiff concludes that the court in the Registration Action had the power to make an agency or instrumentality determination under the TRIA absent an explicit or implicit restriction on jurisdiction. (*Id.*).

There is a dearth of authority on this question. One of the few courts to address it is the District Court of the District of Columbia. Its holding in *Estate of Heiser v. Islamic Republic of Iran* states in part that the TRIA "implicates exclusively federal interests." 885 F.Supp.2d at 444. Certainly, a finding by any court in the United States that an international company or entity, such as RTSA, is an agent or instrumentality of a terrorist organization implicates federal interests. Such a finding might impact the interests of the Department of State, the Department of Homeland Security, and the Department of Justice, to name a few. Moreover, to designate PDVSA, a company owned by the Venezuelan government, an agent or instrumentality of a terrorist group certainly impacts federal diplomatic policy.

In this context, the potential for such a decision to affect federal interests could not be demonstrated more clearly. During the pendency of this case and within the last 12 months, it has been reported that the State Department has changed its stance as to whom the President of Venezuela is and the Executive Branch has shifted from away from its policy of sanctions concerning Venezuelan oil (due to the Maduro regime's pattern of political oppression and rampant human rights abuses) and is currently trying to negotiate with Venezuelan authorities

regarding oil.[8] An adverse finding by any court in this country might impact these negotiations.[9]

In *Heiser*, however, the central question was whether federal law or District of Columbia property law applied when deciding whether there was terrorist state ownership in a contested bank account. *Id.* The court held that "the idea that *state* property law definitions of ownership should control the disposition of these assets flies in the face of the dominant federal interest in our relations with terrorist states." *Id.* This Court does not find that the reasoning in *Heiser* mandates the conclusion that determinations under the TRIA are reserved exclusively for federal courts. The court's holding there rested on the determination of whether there was: (1) a terrorist state in question, and (2) if there was one, whether it had ownership interests in a certain bank account. It

---

[8] The current Administration reaffirmed its recognition of Juan Guaidó as President of Venezuela in 2022. *See* Press Statement, Ned Price, Dep't Spokesperson, U.S. Dep't of State, *U.S. Recognition of Venezuela's 2015 National Assembly and Interim President Guaidó* (Jan. 4, 2022) https://www.state.gov/u-s-recognition-of-venezuelas-2015-national-assembly-and-interim-president-guaido/. Nevertheless, a recent Reuters headline read, "Washington coy on Venezuela's Guaidó, still recognizes 2015 National Assembly." Trevor Hunnicutt, *Washington coy on Venezuela's Guaido, still recognizes 2015 National Assembly*, Reuters (Jan. 3, 2023), https://www.reuters.com/world/americas/us-continues-recognize-venezuelas-2015-national-assembly-interim-president-white-2023-01-04/.   Thus, the United States government has gone from recognizing Nicolas Maduro as President (pre-2019), to recognizing Juan Guaidó as president, to today only recognizing the 2015 National Assembly. *See* Press Statement, Michael R. Pompeo, U.S. Sec'y of State, *Recognition of Juan Guaido as Venezuela's Interim President* (Jan. 23, 2019), https://2017-2021.state.gov/recognition-of-juan-guaido-as-venezuelas-interim-president/index.html; Press Statement, Ned Price, Dep't Spokesperson, U.S. Dep't of State, *Venezuela's Interim Government and the 2015 National Assembly* (Jan. 3, 2023), https://www.state.gov/venezuelas-interim-government-and-the-2015-national-assembly/. Not only do these recent events demonstrate the reality of shifting positions and allegiances (even within the same United States Administration), but relevant to the issues in this case, the President of Venezuela appoints the head of PDVSA, and thus would seemingly have some control over its policies, including whether it aided and abetted a terrorist organization. In fact, President Maduro, to the extent he is President, just appointed a new head of PDVSA. Vivian Sequera, *Venezuelan president names new head of PDVSA, foreign minister*, Reuters (Jan. 6, 2023), https://www.reuters.com/world/americas/venezuelan-president-names-new-head-pdvsa-foreign-minister-2023-01-06/.

[9] *See e.g.,* Matthew Smith, *Biden Might Not Be Able To Lift Sanctions On Venezuela Even If He Wants To*, Oil Price (Nov. 17, 2022), https://oilprice.com/Energy/Crude-Oil/Biden-Might-Not-Be-Able-To-Lift-Sanctions-On-Venezuela-Even-If-He-Wants-To.html; *see also* The Editorial Board, *Biden's Man in Venezuela*, Wall Street Journal (Nov. 28, 2022), https://www.wsj.com/articles/bidens-man-in-venezuela-nicolas-maduro-sanctions-11669674747 ("The U.S. lifted Trump-era sanctions on Caracas over the weekend, renewing a license for Chevron to pump oil again in its joint ventures with the state-owned oil company PdVSA. The U.S. will also unfreeze $3 billion in Venezuelan assets for what it says will be 'humanitarian' needs. In exchange, dictator Nicolás Maduro is promising to negotiate free and fair elections in talks with the opposition in Mexico City."); Jeremy Beaman, *Chevron in Venezuela: The Biden Administration's Sanctions Relief Explained*, Washington Examiner (Nov. 30, 2022), https://www.washingtonexaminer.com/policy/energy-environment/what-the-easing-of-venezuela-sanctions-means-for-oil-market ("The Treasury Department is easing sanctions against Venezuela's oil sector, allowing U.S.-based Chevron to pick operations up where they left off to comply with sanctions the Trump administration introduced in 2019. Treasury's Office of Foreign Assets Control issued a new general license on Saturday authorizing Chevron to resume 'limited natural resource extraction operations' through its joint ventures with state-owned oil company [PdVSA], opening the door for a rekindling of the energy trade between the U.S. and Venezuela.").

is clear that the TRIA would apply in determining whether an entity is considered a terrorist organization by the United States. After all, such determinations involving foreign relations are not usually issued lightly—and are not determinations that are usually left up to state authorities. A finding that federal law controls whether a country or other entity can be categorized as a terrorist organization, however, is not the same as a holding that such a determination is relegated to the exclusive jurisdiction of federal courts. State courts are capable of enforcing federal law and judgments. *See Howlett v. Rose*, 496 U.S. 356, 370-73, n. 16 (1990) (holding that in our system of federalism, state courts share responsibility for the application and enforcement of federal law and a state court may not deny a federal right in the absence of a "valid excuse" because the existence of jurisdiction creates an implication of a duty to exercise it).

Furthermore, this Court does not find RTSA's reliance upon the text of the ATA to be determinative. In fact, based upon the different language in the two acts, a good argument could be made for the opposite conclusion. Unlike the TRIA, the ATA *does* contain an explicit provision mandating exclusive federal jurisdiction for claims under the statute. 18 U.S.C. § 2333(a) ("Any national of the United States injured…by [an] act of international terrorism…may sue [in] any appropriate district court of the United States"). Nowhere in the text of the TRIA is there an explicit mandate or similar indication that cases involving the statute can only be heard by federal courts. Although the ATA and the TRIA are often implicated in the same context, the Court does not read the ATA's § 2333(a) jurisdiction restrictions to implicitly extend to a TRIA based action. One could argue persuasively that the fact that the ATA explicitly requires exclusive federal jurisdiction and the fact that the TRIA does not is an indication of Congress' intent that the latter is not the sole province of federal courts. Moreover, while the ATA § 2333(e) references the TRIA, it does so to delineate what constitutes a "blocked asset" under the statute and to identify the TRIA as the appropriate avenue for recovery against agents or instrumentalities of terrorist organizations.

Finally, the fact that the statutes are meant to work together is not determinative of the jurisdictional issue. In other words, merely because plaintiffs sue for damages arising from acts of international terrorism under the ATA and then utilize the TRIA to recover blocked assets of agencies or instrumentalities of the terrorist organization in question does not mean both must be done in federal court. *See Weininger v. Castro*, 462 F.Supp.2d 457 (S.D.N.Y. 2006); *Estates of Ungar ex. rel. Strachman v. Palestinian Auth.*, 304 F.Supp.2d 232 (D.R.I. 2004).

Although this Court may theoretically agree with RTSA that the state court erred during its *ex parte* "proceeding" in the Registration Action, it is not convinced that any such error was due to a lack of subject matter jurisdiction. Any invalidity associated with the state court's *ex parte* "proceeding" in the Registration Action was born either out of an infringement of RTSA's due process rights or out of a faulty underlying judgment, rather than a question of whether the state court had jurisdiction to enforce a final judgment from a United States District Court in Florida.

Further, this Court does not find that ATA § 2333(a)'s federal jurisdiction requirement automatically applies to an action brought under the TRIA. While it might have been wise policy for Congress to have included such a provision in the TRIA, a federal court is not the forum to graft such a provision onto a legislative act. In conclusion, this Court does not find that the state court lacked jurisdiction in the Registration Action to entertain an enforcement action stemming from the final judgment entered by the United States District Court in Florida, nor does it necessarily find the state lacked jurisdiction to make an agency or instrumentality determination under the TRIA if it had done so in a manner complying with law.

2. Constitutional Issues

RTSA argues that the manner in which the state district court made the *ex parte* finding that it was an agent or instrumentality was illegal and unconstitutional under both federal and state constitutions. (Doc. No. 82). Furthermore, it argues that no court, regardless of whether it be state

or federal, can, without notice, in what amounts to be a secret hearing, turn a lawsuit ostensibly to register an out of state judgment into an expansion of that judgment so as to apply it to unrelated parties. (*Id.*). This Court agrees.

There is no federal or state law nor any federal or Texas rule of civil procedure that would allow the state court to do what it did here in the manner it did it. To make clear what happened, the state court, without notice of any kind to the affected parties, expanded a Southern District of Florida judgment against unnamed parties to cover heretofore unrelated entities not named in that judgment and did so without giving those unnamed parties notice or chance to oppose the fact that their well-being was being attacked in Texas. Subsequently, still without notice, the finding presumably becomes "final" when the case is disposed of. As the sequence of events then unfolded, the Plaintiff used the unchallenged, and perhaps unchallengeable, *ex parte* finding to pursue RTSA's assets in a different lawsuit.

There are so many different violations of federal and state law involved in the Registration Action that this Court hardly knows where to begin. Suffice it to say, when a court, without notice to the affected parties, acts in an *ex parte* fashion to expand another court's judgment to cover two parties who were never given a chance to defend themselves, it violates the due process clauses of both the constitutions of the United States and Texas. *Custom Corporates, Inc. v. Sec. Storage, Inc.*, 207 S.W.3d 835, 839–40 (Tex. App.—Houston [14th Dist.] 1993, no writ) ("[E]nforcement orders may not be inconsistent with the original judgment and may not constitute a material change in substantial adjudicated portions of the judgment"); *Peacock v. Thomas*, 516 U.S. 349, 355, 357-58 (1996) (federal ancillary jurisdiction does not expand to "a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment"). In both jurisdictions, the hallmark of due process is notice and a chance to be heard. U.S. Const. amend. V; Tex. Const. art. I, § 19; *see University of Texas Medical School at Houston v. Than*,

14

901 S.W.2d 926, 930 (Tex. 1995) ("Due process at minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner"). RTSA was given neither. A judgment obtained without notice and without a chance to be heard is clearly voidable, if not void, and unenforceable. *See* U.S. Const. amend. V; *see Griffin v. Griffin*, 327 U.S. 220, 228-229 (1946); *Bass v. Hoagland*, 172 F.2d 205, 209 (5th Cir. 1949); *In re Merino*, 542 S.W.3d 745, (Tex. App.— Houston [14th Dist.] 2018, no pet.) (a judgment is void and subject to collateral attack if there was a complete failure or lack of service that violates due process). [10]

While this Court's analysis with regard to the Registration Action is just a restatement of the most basic tenets of American justice, this Court would be in error to reverse any action taken in the Registration Action. Unlike state district courts, federal courts are courts of limited jurisdiction, and, as recounted above, the agent and instrumentality ruling in question was made in the Registration Action (Cause No. 20-09-11744). After this finding was made, no other action took place in the Registration Action. There is no actual judgment in that case and the case is no longer active. Importantly, however, the Registration Action was not the case that was removed to this Court. This Court has before it only the Attachment Action (Cause No. 20-12-15427), as that was the matter removed from state court. Since this Court has no jurisdiction over the Registration Action, it cannot reverse or otherwise rule on the findings made in that case regardless of how fallacious they may be.

## B. The Attachment Action

On December 16, 2020, Caballero initiated the Attachment Action by filing his Application for Post-Judgment Writ of Garnishment. Attached to that Application was, among other items, an affidavit from one of the attorneys, docket sheets from two federal district court cases from the

---

[10] Given this Court's ultimate ruling, that it lacks jurisdiction over the Registration Action, it serves no purpose to go further and analyze other problems inherent in that cause.

Southern District of New York, and the "Final Judgment" Caballero had obtained in Florida. None

of these documents support an issuance of a writ of garnishment against RTSA. Also in the file

was a copy of the application to have RTSA denoted an agent or instrumentality Plaintiff made in

the Registration Case, *but not the order*. Based solely on these documents, the District Clerk of

Montgomery County issued the Writ of Garnishment After Judgment against RTSA on December

18, 2020, and then an amended writ on December 23, 2020. It was not until this later date, almost

a week after the initial writ was issued, that Plaintiff actually filed the order from the Registration

Case that purports to support the writ issued a week earlier in the Attachment Action. There was

no certificate of service attached to that filing and no one to date claims it was ever served on

RTSA.

Thus, a review of the state court Attachment Action file reveals a number of highly unusual

aspects. First, there has *never* been a judgment that RTSA is liable to Caballero in any case related

to this one—yet both the December 18 Writ and the December 23 Amended Writ are titled "Writ

of Garnishment *After Judgment*." (Doc. Nos. 1-5, 1-6) (emphasis added). The only "judgment"

provided as a basis for the writs was the Florida federal court judgment and it does not name

RTSA. Second, neither writ was signed or approved of by a judge. Both were executed by the

District Clerk. Third, at the time the first writ was executed, there was *no* order of any kind filed

in the Attachment Action that would support the issuance of a writ against RTSA.

Fourth, and of particular interest, is the fact that the Florida judgment upon which both

actions are based does not place liability on, or award damages against, any specific person or

entity. *It does not even hold, find, or adjudge FARC and/or NdVC to be liable to Caballero.*

Thus, even if the file that was before the clerk contained the finding from the Registration Case

that RTSA was the agent or instrumentality of FARC, that finding would not justify further action

against it because the actual judgment is silent as to FARC. In effect, the District Clerk, without

16

any order in the pertinent file, used a Florida judgment that is silent as to whom is liable to issue a writ of garnishment against an entity that was not involved in the Florida lawsuit or either of the Texas cases; and it did so in an *ex parte* fashion without giving notice to the affected parties or giving them a chance to appear.

As was mentioned above, the Attachment Action also includes the affidavit from counsel. An affidavit is required by Rule 658 and, among other requirements it, "shall state the grounds for issuing the writ and the specific findings relied upon by the plaintiff to warrant the required findings by the court." Tex. R. Civ. P. 658. Again, as pointed out above, at the time the first writ was issued, there were no findings contained in the Attachment Action. Moreover, the affidavit of counsel falls short of providing a basis for the writ.

First, it identifies Caballero as the "Judgment Creditor" in the Florida action. (Doc. No. 1-3, 8 at ¶ 1). Then it states:

> 2. Zumpano Patricios, P.A. represents Antonio Caballero in an action before the United States District Court for the Southern District of Florida, Case No. 18-cv-25337-KMM (the "Florida Federal Action").
>
> 3. On May 20, 2020, ***the Court in the Florida Federal Action entered a Final Judgment on behalf of the Plaintiff Antonio Caballero and against the Judgment Creditors herein*** (the "Final Judgment").

(*Id.*, 9 at ¶¶ 2–3) (emphasis added). Caballero is the Judgment Creditor. Thus, according to the affidavit, Caballero obtained the Florida judgment against himself. This is clearly not accurate because, as discussed in detail below, the final judgment is not "against" anyone.

The affidavit further states:

> 7. Within my knowledge, Judgment Debtors do not possess property in Texas titled in their name subject to execution sufficient to satisfy said Final Judgment. The Judgment Debtors are terrorist parties who do not title assets in their own names. Instead, they use "straw men" to hold their assets.
>
> 8. The United States District Court for the Southern District of New York has determined Petroleos de Venezuela, S.A. (a/k/a PDVSA; a/k/a PETROLEOS DE VENEZUELA S A; a/k/a PETROLEOS DE

17

VENEZUELA S.A; a/k/a REFINERIA EL PALITO) ("PdVSA") and its subsidiaries are agents or instrumentalities of Defendant Fuerzas Armadas Revolucionarias de Colombia ("FARC"). While the orders are currently under seal, the docket sheets reflect that such relief has been granted. *See* Exhibit 2 to the Application for Post-Judgment Writ of Garnishment.

9.      Within my knowledge, Garnishee Vitol Inc. is indebted to Rosneft in the amount of $12,661,259.98, and is indebted to PdVSA in the amount of $9,444,116.76. My knowledge is based upon Garnishee's written response to a subpoena issued in another case.

(*Id.*, 10 at ¶¶ 7–9).

Paragraph 7 may be partially accurate; the exception being there are no Judgment Debtors named as being liable in the judgment to which it refers. Paragraph 8 is not accurate, at least not according to the attachments to the affidavit. While counsel does disclaim having ever seen the actual orders, the docket sheets he purports to paraphrase do not support his conclusion.[11] The docket sheets in Cause No. 1:18-mc-00545 and Cause No. 1:16-mc-00405 actually state, in pertinent part:

Cause No. 1:18-mc-00545:

| 12/15/2020 | 40 | ***SELECTED PARTIES*** ORDER granting 37 Motion for Writ of Execution.it is ORDERED AND ADJUDGED as follows: (1) This Court has subject matter jurisdiction to conduct post- judgment execution proceedings of plaintiffs' final judgment under a federal statute (ATA), rendered by a U.S. district court and properly registered in this district pursuant to 28 U.S.C. § 1963, with post- judgment execution under the ATA and TRIA §201. (2) Plaintiff's Ex Parte Motion is hereby granted; (3) Based upon the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") factual findings and Plaintiffs' supporting expert witness testimony and appendices, *the Court finds that the OFAC IEEPA sanctioned PDVSA subsidiaries (identified in plaintiffs' Motion DE 37, p. 21) are each an agency or instrumentality of the FARC*, and their blocked assets are therefore subject to attachment and execution pursuant to TRIA; (4) The Clerk of Court is hereby directed to issue the writ of execution in the form attached to Plaintiffs' Ex Parte Motion [DE37-7], (held by chambers) for service and levy on |

---

[11] These orders are sealed so it is understandable that counsel could not view them.

| | | garnishees by the U.S. Marshals or the specially appointed process server, Mike Levey, NY Server LLC [Order DE 7]; and (5) The Clerk of this Court is authorized and directed to issue such further writs in aid of execution as warranted under, and in accordance with, Rule 69 of the Federal Rules of Civil Procedure, consistent with the Court's Order. (6) The Clerk of this Court shall file this Order so that it is only viewable by Plaintiffs, in accordance with this Court's Order [DE 39]. So Ordered. (Signed by Judge Andrew L. Carter, Jr on 12/15/2020) (js) Transmission to Orders and Judgments Clerk for processing. (Entered 12/16/2020) |

(Doc. No. 1-3, Ex. 2 at 21) (emphasis added).

Cause No. 1:16-mc-00405:

| 12/15/2020 | 114 | ***SELECTED PARTIES*** ORDER granting 111 Motion for Writ of Execution; granting 112 Motion for Writ of Execution. It is ORDERED AND ADJUDGED as follows: (1) This Court has subject matter jurisdiction to conduct post-judgment execution proceedings of plaintiffs' final judgment under a federal statute (ATA), rendered by a U.S. district court and properly registered in this district pursuant to 28 U.S.C. § 1963, with postjudgment execution under the ATA and TRIA §201. (2) Plaintiffs' Ex Parte Motion is hereby granted; (3) Based upon the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") factual findings and Plaintiffs' supporting expert witness testimony and appendices, *the Court finds that the OFAC IEEPA sanctioned PDVSA subsidiaries (identified in plaintiffs' Motion DE 111, p. 21) are each an agency or instrumentality of the FARC*, and their blocked assets are therefore subject to attachment and execution pursuant to TRIA; (4) The Clerk of Court is hereby directed to issue the writ of execution in the form attached to Plaintiffs' Ex Parte Motion [DE111-7], (held by chambers) for service and levy on garnishees by the U.S. Marshals or the specially appointed process server, Mike Levey, NY Server LLC [Order DE 22]; and (5) The Clerk of this Court is authorized and directed to issue such further writs in aid of execution as warranted under, and in accordance with, Rule 69 of the Federal Rules of Civil Procedure, consistent with the Court's Order. (6) The Clerk of this Court shall file this Order so that it is only viewable by Plaintiffs, in accordance with this Court's Order [DE 113]. (Signed by Judge Andrew L. Carter, Jr on 12/15/2020) (tro) Transmission to Orders and Judgments Clerk for processing. (Entered 12/16/2020) |

(*Id.* at 41) (emphasis added).[12]

First, these docket sheets do not memorialize a finding that PDVSA was an agent or instrumentality of FARC. There is a world of difference between being an "a/k/a" as suggested in the affidavit and being the parent subsidiary as noted in the docket sheets. The former, "also known as," usually means that it is the same entity known by a different name. The latter, denoting a subsidiary-parent relationship, indicates different entities. Neither court found PDVSA to be an agent or instrumentality of FARC or found them to be the same entities that were found to be agents or instrumentalities, only known by a different name. The courts certainly seem to have found certain subsidiaries of PDVSA to be instrumentalities or agents of FARC, but these findings did not apply to PDVSA as the affidavit certainly implies. Whether intentional or not, this was a misstatement or at least an ambiguity and clearly could have misled the clerk who issued the writs.

Consequently, what this Court has before it in the now-removed Attachment Action is as follows. It has an original and an amended "writ of garnishment after judgment" that were both signed by the District Clerk. There were no judgments to support these writs. There were no judicial findings or orders of any kind in that case that could justify the first writ at the time it was issued. The writs are, in large part, based on an out of state judgment that does not specify what entities, if any, are liable and an affidavit that states, at least at one point, that the Plaintiff's judgment is against himself. The writs were also obtained by a questionable interpretation of docket sheets from two different courts. All of the events in Texas took place on an *ex parte* basis and neither the owner or possessor of the assets that were the object of the writs was given notice or an opportunity to contest any facet of the process.

Given these circumstances, what could go wrong?

---

[12] While not in their record, and perhaps not available to counsel, this Court has seen the actual orders and they support the summary in the docket sheets to the effect that the findings do not name PDVSA, only certain PDVSA subsidiaries.

1.  Unenforceable Judgment

Here, RTSA was "found liable" to the Plaintiffs and its assets were garnished by a stacking of alleged findings in not one, not two, not three, not four, but *five* lawsuits—and it was not a party in any of them.[13] Furthermore, the pathway by which it was found liable contains a number of unacceptable leaps of logic.

First, Plaintiff obtained a default judgment against some unnamed party in a Florida federal district court. Rule 58 governs judgments in federal court and, while there are no particular words that must be used, the prevailing rule is that a judgment should be self-sufficient. Fed. R. Civ. P. 58; *see also* 11 Wright, Miller & Kane, Federal Practice and Procedure § 2785 (3d ed.). The Seventh Circuit perhaps summarized Rule 58 best when it held: "Under Fed.R.Civ.P. 58 the judgment must be self-contained and complete. [citing authority]. It must describe the relief to which the prevailing party is entitled and not simply record that a motion has been granted." *Am. Interinsurance Exch. v. Occidental Fire & Cas. Co. of N. Carolina*, 835 F.2d 157, 159 (7th Cir. 1987). It must also state the party or parties against whom the relief is granted. The judgment in this case does not. As such, there is no judgment against a terrorist party which, as seen above, is the very first element one must prove to prevail in a lawsuit brought under the TRIA.

Texas rules governing judgments are similar. They require, at a minimum, the names of the parties, as stated in the pleadings, for and against whom the judgment is rendered. Tex. R. Civ. P. 306. The judgment in this case does not specify FARC as being liable. It does not specify any party as being liable. As such, it is not a judgment against anyone. Counsel has represented the judgment is against FARC and that certainly seems to have been the intent—but the judgment is

---

[13] Arguably, one could raise this number to seven cases if one counts the two Florida cases cited in the Motion for Agency and Instrumentality Determination filed in the Registration Action in addition to the two New York cases cited in the affidavit. (Doc. No. 1-4). *See* Cause S.D.N.Y. Cause No. 1:16-mc-00405; S.D.N.Y Cause No. 1:18-mc-00545; S.D. Fla. Cause No. 1:19-cv-20896; S.D. Fla. Cause No. 1:10-cv-21517.

silent as to what person or entity owes millions of dollars to Caballero.

For purposes of completeness and because of the importance that this opinion places on the exact wording, or lack thereof, the Court reproduces the judgment, as presented, in its entirety:

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:18-cv-25337-KMM

ANTONIO CABALLERO,

    Plaintiff,

v.

FUERZAS ARMADAS REVOLUCIONARIAS
DE COLOMBIA, et al.,

    Defendants.

_____/

**FINAL JUDGMENT**

THIS CAUSE came before the Court upon the Court's Order on Motion for Default Final Judgment. (ECF No. 62). Pursuant to Rule 58 of the Federal Rules of Civil Procedure, it is hereby ORDERED AND ADJUDGED that Final Judgment is entered in favor of Plaintiff Antonio Caballero in the amount of forty-five million dollars ($45,000,000.00) in actual, compensatory non-economic damages, which is further trebled pursuant to 18 U.S.C. § 2333; one million, seven hundred and twenty-nine thousand, six-hundred and sixty-seven dollars ($1,729.667.00) in actual, compensatory economic damages, which is further trebled pursuant to 18 U.S.C. § 2333; and post-judgment interest at the rate of 0.15% from May 20, 2020, the date of final judgment, on the above-awarded trebled economic and non-economic damages, for which sum let execution issue.

DONE AND ORDERED in Chambers at Miami, Florida, this 20th day of May, 2020.

K. MICHAEL MOORE
UNITED STATES CHIEF DISTRICT JUDGE

c: All counsel of record

MINUTE 12/17/2020

22

As is evident, this judgment is not a valid judgment against FARC, NdVC, or anyone else. It does not name any entity or person as being liable. While it purports to award Caballero damages, that is all it does. At best, it is a mere finding of damages. Even if one assumes hypothetically RTSA was an agent or instrumentality of FARC, the judgment that is the basis of this lawsuit does not award any damages against FARC. As noted above where the Court quoted the note from 18 U.S.C. § 1610, the blocked assets of an agent or instrumentality of a terrorist party may be pursued where a person has obtained a judgment *against a terrorist party* and the assets sought must be assets of an agent or instrumentality of *"that* [terrorist] *party"* named in the judgment. *See also* 18 U.S.C. § 2333(e). FARC is not named in the judgment. That being the case, no court can, or at least should, in turn allow execution against the assets of one of its agents or instrumentalities in hopes of satisfying a judgment against entities unknown.

Second and third, two other federal courts in New York found Petrocedeño, a subsidiary of PDVSA, to be an agent or instrumentality of FARC. Nonetheless, it is important to note that PDVSA was not a subject of either finding, nor was it the subject of the findings in the two Florida cases cited in Caballero's Motion for Agency or Instrumentality Determination. Fourth, Plaintiff sought to register and enforce his Florida judgment in Texas. Again, this is the same judgment that does not find any person or entity, much less RTSA, liable to Caballero. Despite this glaring omission, the Plaintiff filed a Motion for Agency or Instrumentality Determination in the Registration Action. (Doc. No. 1-4). It was filed without notice and was presented and granted *ex parte*. In that motion, it is represented that Plaintiff has a default judgment against FARC dated May 20, 2020. This is demonstratively untrue. Caballero has a default judgment dated May 20, 2020, but it is silent as to whom owes the money.[14] The state court then made an *ex parte* factual

---

[14] This Court recognizes that this critical omission may be due to a scrivener's error, but regardless of its cause, this

determination against RTSA and PDVSA with no notice and having given neither an opportunity to contest the application and it did so in a cause that is now closed.[15] Fifth, the Plaintiff filed the Attachment Action and, again without notice or an opportunity for RTSA to defend itself, obtained a writ of garnishment—in the first instance without an order and against the wrong RTSA entity and then an amended writ against the RTSA entity named in the order from the Registration Action, but not named or served in the Attachment Action.

To summarize, based upon a federal judgment out of Florida that does not find any entity —much less either of the defendants in the lawsuit—liable and the findings of two federal courts in New York and/or two in Florida—none of which applied to either PDVSA or RTSA—the Montgomery County District Clerk's Office, without giving either affected party notice or an opportunity to defend itself, and without a court order in the file as to the initial writ, issued two writs of garnishment after judgment—even though there is no judgment that names anyone as being liable. Moreover, RTSA is allegedly named because it has a relationship with PDVSA (who according to the record, had not been found to be an agent or instrumentality prior to the Registration Action) and because PDVSA had a parent-subsidiary relationship with Petrocedeño who in turn apparently had a relationship with FARC. The only missing link in this convoluted chain is some relationship with Kevin Bacon.

The following chronology helps explain the course of events.

---

error remains uncorrected. That being the case, based solely on the wording of the judgment in question, no court should even enforce the default judgment against FARC, much less an unrelated party.

[15] The actual docket sheet describes its status as "disposed." The Court also notes the Montgomery County District Clerk's Office record describes the case as "Antonio Caballero vs. Fuerzas Armadas Revolucionarias De Colombia a/k/a FARC-EP a/k/a Revolutionary Armed Forces of Colombia, the Norte de Valle Cartel." This Court takes no position as to whether it is possible under Texas law to have this finding set aside under some unusual procedure, such as a bill of review.

24

# Chronology

**The Final Judgment in Florida**
*Caballero v. FARC & NRDC*
Issued May 20, 2020

Case No. 1:18-cv-25337
U.S. District Court, S.D. Florida

↓

**Registration Action**
*Caballero v. FARC & NRDC*
Filed Sept. 28, 2020

Case No. 20-09-11744
284th Judicial District Court Montgomery County, TX

↓

**Registration of Florida Judgment Filed in Texas**
Filed Sept. 28, 2020

↓

**Motion for Agency or Instrumentality Determination**
Filed Nov. 25, 2020

↓

**Order Granting Plaintiff's Motion for Agency or Instrumentality Determination**
Signed Dec. 16, 2020

↓

**Case disposed of**
Date unknown

---

**Attachment Action**
*Caballero v. FARC & NRDC v. Vitol*
Filed Dec. 16, 2020

Case No. 20-12-15427
284th Judicial District Court Montgomery County, TX

↓

**Application for Post-Judgment Writ of Garnishment**
Only included: Affidavit of Leon Patricios (Ex. 1), Docket Sheets of S.D.N.Y. 1:18-mc-00545 & 1:16-mc-00405 (Ex. 2), Notice of Registration of Foreign Judgment (Ex. 3).
Filed Dec. 16, 2020

↓

**Montgomery County Court Clerk Issues Writ of Garnishment #1**
Issued Dec.18, 2020

↙ ↘

**Plaintiff serves Vitol w/ writ #1 & application for post-judgment writ of garnishment**
Served Dec. 22, 2020

**Plaintiff mails writ #1 & application for post-judgment writ of garnishment to RTSA**
Mailed Dec. 28, 2020

↙ ↘

**Plaintiff files Notice of Supplemental Authority**
Included: Order Granting Plaintiff's Motion for Agency or Instrumentality Determination and authorizing garnishment
Filed Dec. 23, 2020, 8:07AM

↓

**Montgomery County Court Clerk Issues Amended Writ of Garnishment**
(apparently amended due to clerical error)
Issued Dec. 23, 2020, 9:10AM

↙ ↘

**Plaintiff serves Vitol w/ amended writ & application for post-judgment writ of garnishment**
Served Dec. 29, 2020
Date of receipt unknown

**Plaintiff mails amended writ & application for post-judgment writ of garnishment to RTSA. Order still omitted.**
Mailed Dec. 29, 2020

↘ ↙

**This Case**
Removed to federal court by Vitol Jan. 15, 2021

U.S. District Court, S.D. TX

↓

**Vitol files counterclaim and third-party petition in interpleader against RTSA**
Filed Jan. 22, 2021

↓

**Vitol serves RTSA**
Served on Feb. 5, 2021



The Court finds based upon the above analysis that Caballero does not have a valid judgment against a terrorist entity that would support his claims herein.

## 2. Constitutional Infirmities

While there exist more than a few statutory or procedural problems with the manner in which these events unfolded, the most troubling aspects are clearly the due process implications. Consequently, even if Plaintiff's judgment was sufficient, the Court finds the process that has gotten the parties to this point to be constitutionally infirm. As stated above, the hallmark of due process is notice and an opportunity to defend oneself. This is true under federal law. U.S. Const. amend V; U.S. Const. amend. XIV; *see Fuentes v. Shevin*, 407 U.S. 67, 80 (1983); *Lochner v. New York*, 198 U.S. 45, 53 (1905). This is equally true under Texas law. Tex. Const. art. I, § 19; *see Lakey v. Taylor*, 435 S.W.3d 309, 317 (Tex. App.—Austin 2014, no pet.). It is no less true under the primary case law Plaintiff cites to this Court. *Stansell I*, 771 F.3d 713 at 726–27.

Among the limited precedent available, Plaintiff understandably, and repeatedly, relies on *Stansell I* in an attempt to skirt the glaring due process issues present in this case. In *Stansell I*, the judgment creditor obtained a $318 million default judgment against FARC, and similarly initiated collection efforts against non-party entities in federal district court. *Stansell I*, 771 F.3d 713 at 723. The entities, like RTSA, were not parties to the underlying lawsuit and were not named in the proceeding where the plaintiff registered the judgment it obtained. *Id.* at 727. The plaintiff in *Stansell I*, like the Plaintiff here, filed an *ex parte* motion and asked the court to find that the entities were agents or instrumentalities of FARC. *Id.* at 724. The district court found that each entity was an agent or instrumentality of FARC. *Id.* The entities eventually appealed, arguing, among other things, that they were denied due process rights to notice and a hearing because they were not served with writs of garnishment or the motions requesting the writs prior to execution, and finally they contested that they were erroneously designated as agencies or instrumentalities by the district

26

court. *Id.* The Eleventh Circuit found that the entities were entitled to the Fifth Amendment's guarantee of due process—and that because an agency or instrumentality determination carries "drastic results"—it undeniably implicated due process concerns. *Id.* at 727. Further, the court noted:

> Where the owner of the asset being garnished is the judgment debtor, notice upon commencement of a suit is adequate to give a judgment debtor advance warning of later proceedings undertaken to satisfy a judgment. ***That same type of notice is not sufficient where the claimant is a third party, who cannot be expected to be on notice of the judgment…. Without notice and a fair hearing where both sides are permitted to present evidence [when the district court makes the agency or instrumentality determination], the third party never has an opportunity to dispute its classification as an agency or instrumentality.***

*Id.* at 726–27 (emphasis added) (brackets in original).

In Plaintiff's briefing, he focuses on the portion of the Eleventh Circuit's holding in *Stansell I* that these unrelated entities were not constitutionally entitled to a hearing before attachment, only before execution. *Id.* at 729; (Doc. No. 89 at 18–19). What Plaintiff ignores, however, are the key distinctions between what happened here and what happened to the entities in *Stansell I*. In *Stansell I*, while the entities were not granted hearings before the district court made its *ex parte* determination that they were agencies or instrumentalities of FARC, they later had an opportunity and "made factual proffers" on the issue of whether they were agents or instrumentalities before *the same district court that made the initial agency or instrumentality determination* and before execution. *Id.* at 728–29. The Eleventh Circuit found that the entities had thus "received actual notice and appeared" and had been "afforded an opportunity to be heard" and thus the proceedings satisfied due process. *Id.* at 741. Unfortunately, that was not the scenario for RTSA in Montgomery County. In the instant situation, RTSA was found to be an agent or instrumentality in an *ex parte* proceeding of which it had no notice. The finding was in a case (Cause No. 20-09-11744) in which it was never a party. That case was closed, but then theoretically

on the basis of that order, RTSA's assets were seized in a different case (Cause No. 20-12-15427).

Whether done intentionally or not, this procedural shift deprived RTSA of any hearing, meaningful

or otherwise, to contest the finding.

More recent case law does not support Plaintiff's arguments either. Since *Stansell I* was

decided, the Eleventh Circuit considered *Stansell v. Lopez Bello* ("*Stansell II*"). *Stansell v. Lopez

Bello,* 802 Fed. Appx. 445 (11th Cir. 2020). In *Stansell II*, the judgment creditor from *Stansell I*

again filed an *ex parte* motion with a federal district court to enforce its $318 million dollar default

judgment, this time against Lopez Bello ("Bello"). *Stansell II*, 802 Fed. Appx. 445 at 447. Bello,

like the entities from *Stansell I* (and RTSA, here), was never named or a party in either *Stansell I*,

or *Stansell II*. *Id.*

In *Stansell II*, the Eleventh Circuit expounded on their due process concerns and their prior

ruling in *Stansell I*.

> This Court previously addressed many of the due process issues presented here in
> *Stansell I*, which involved the same Plaintiffs (Stansell and other judgment
> creditors), but different Claimants. 771 F.3d 713. In that case, the Claimants
> contended that they were "denied their rights to notice of the execution proceedings
> [against their assets] and an opportunity to be heard." *Id.* at 725. Like here,
> "[Stansell] initiated [his] collection efforts in each instance ex parte, without any
> direct notice to Claimants." *Id.* at 724. The District Court in Stansell I found each
> claimant to be an agency or instrumentality of FARC and found that the relevant
> assets were blocked and subject to attachment and execution. Id. On appeal, *we
> concluded that, as non-judgment debtor third parties, the Claimants were entitled
> to notice of the proceedings involving their assets. Id.* at 727. *The default
> judgment against the judgment debtor, FARC, was insufficient to satisfy due
> process as to the third-party Claimants because third parties "cannot be expected
> to be on notice of the judgment" or prepared to defend against later attempts to
> satisfy the judgment with their assets. Id. Additionally, we held that the Claimants
> were entitled to a "sufficient opportunity to be heard" on their "challenge to the
> agency or instrumentality issue." Id.* at 727–28.

*Id.* at 448 (emphasis added).

The court emphasized, as this Court is, that the hallmarks of due process are notice and an

opportunity to be heard. *Id.* at 449. Here, RTSA received neither.

Unlike the appellants in *Stansell I* and Bello in *Stansell II*, RTSA did not have notice or an opportunity to be heard in the Registration Action before the state court in Montgomery County, Texas, that made the determination that it was an agency or instrumentality. Therefore, RTSA never had the chance to make factual proffers like the appellants in *Stansell I* nor was it given time to contest the findings from the Registration Action like Bello in *Stansell II*. After the agency or instrumentality findings were made, the garnishment writs were issued in a different case, and RTSA's assets were attached—all before it had notice and an opportunity to be heard. Such a procedure turns two different constitutions on their respective heads. Importantly, unlike *Stansell I*, RTSA's eventual appearance in this court does not cure the problem. While RTSA can argue here that the writs were wrongfully obtained and issued in violation of its rights, the actual finding that triggered this action was wrongfully made in the Registration Action. That case is now disposed of and RTSA was *never* given any right to contest the *ex parte* findings. It cannot contest that original finding here because the Registration Action is not before this Court. Thus, even under those cases which make the distinction between a pre-writ right to contest versus a pre-execution right to contest, RTSA has been denied both and its fundamental rights guaranteed by the Constitution and laws of the United States and the Constitution and laws of Texas have been violated.

3.  Texas Garnishment and Service Rules

Plaintiff contends his actions are permissible because he complied with all the requirements of Texas garnishment rules when he complied with Rule 663a and/or Rule 21a. Tex. R. Civ. P. 663a, 21a. The latter is incorporated by reference in the former. RTSA obviously contests this proposition. The Court does not find either rule to be applicable and further finds that even if Rule 663a was controlling, its requirements were not honored.

29

a. Rule 663a Does Not Control

The propriety of the service of a writ of garnishment *on a defendant* is governed by Texas Rule of Civil Procedure 663a. The rule is titled: "Service of Writ and Other Documents on *Defendant*." For purposes of Rule 663a, a "defendant" means a "judgment debtor." *Nat'l Loan v. Fid. Bank*, 51 F.3d 1045, 1995 WL 153421 at *2 (5th Cir. 1995); *accord Barrow v. Wells Fargo Bank, N.A.*, 587 S.W.3d 137, 140 (Tex. App.—Ft. Worth 2019, no pet.). RTSA is not a judgment debtor. Thus, this Court finds that Rule 663a does not apply to RTSA and Plaintiff's alleged compliance with it is not a safe harbor.

b. Even If Rule 663a Applies, There Was No Compliance with Rule 663a

The text of Rule 663a applicable at the time stated, in relevant part: "The *defendant* shall be served in any manner prescribed for service of citation or as provided in Rule 21a...."[16] Tex. R. Civ. P. 663a (emphasis added). It also provides the defendant must be served with "...a copy of the writ of garnishment, the application, accompanying affidavits, and orders of the court as soon as practicable following the service of the writ [on the garnishee]." *Id.*

The Supreme Court of Texas has identified three parties to a traditional garnishment action: (1) the judgment creditor (or garnishor, which here is Caballero); (2) the judgment debtors (which here, are not named, but arguably are FARC and NdVC); and (3) a third person or entity who possesses the debtor's funds or owes money to the debtor (the garnishee, which here is Vitol). *Orange Cnty. v. Ware*, 819 S.W.2d 472, 474 (Tex. 1991).

RTSA was a complete stranger to this proceeding. It does not fit into any of the three categories noted above. As such, it must be sued, and to be sued, *service of process* must be effectuated. Rule 663a clearly contemplates this. If one is already a party, one can be sent pleadings via Rule 21a. If one is not a party, pleadings must be served "in any manner prescribed for service

---

[16] The text of Rule 663a was changed by an amendment that went into effect May 1, 2022.

of citation." Before it was brought into this case by Vitol, RTSA was never a party in the Attachment Action. It was never, to the Court's knowledge, formally served with process by the Plaintiff in the Attachment Action. Consequently, Plaintiff did not comply with the dictates of Rule 663a.

Nonetheless, even if one considers Rule 663a as being controlling and further considers RTSA to be a defendant, Plaintiff still did not comply with Rule 663a. Rule 663a requires that the defendant be served with: (1) the application for writ of garnishment; (2) the accompanying affidavits; (3) the actual writ of garnishment; and (4) the orders of the court effectuating the garnishment. It is undisputed here that no court orders were provided to RTSA. (Doc. Nos. 61 at 21; 62 at 15).

There are only two possible scenarios applicable in this fact situation—one which seemingly applies to each writ. There was either no court order (initial writ) or there was one and RTSA was not served with it (amended writ). If the Plaintiff takes the position that there was not a court order to serve, then the garnishment is fatally defective. Texas law requires the court in the order granting the application for a writ of garnishment make specific findings to support the grounds for garnishment and the maximum value of the property to be garnished. Tex. R. Civ. P. 658. Texas courts have long held that garnishment is a creature of statute and as such courts must strictly comply with those requirements. *Holloway Seed Co. v. City Nat. Bank of Dallas*, 47 S.W. 85, 86 (Tex. 1898). If the Plaintiff takes the position that the court order in the Registration Action is sufficient to justify either or both writs later obtained in the Attachment Action, then this order should have been served on RTSA. Plaintiff obviously understood the importance of this order as he supplemented the record in the Attachment Action to add it—but only did so after the issuance of the initial writ and after he purported to serve RTSA under Rule 663a.

Under either scenario, Plaintiff has not complied with the requirements of Texas law and

31

the service was defective.

Finally, this Court finds that mailing writs of garnishment to a foreign corporation hardly comports with the express goal of the rule that the defendant be served "as soon as practical." Tex. R. Civ. P. 663a. Texas courts have consistently held that delays longer than fifteen days do not satisfy this rule. *Lease Fin. Group, LLC v. Childers*, 310 S.W.3d 120, 126 (Tex. App.—Ft. Worth 2010, no pet.) (citing to *Requena v. Salomon Smith Barney, Inc.*, 2002 WL 356696 at *4 (Tex. App.—Houston [1st Dist.] March 7, 2002, no pet.)). The "service" in this case clearly exceeds that and as such it was non-compliant.

### c. Rule 21a

Texas Rule of Civil Procedure 21a does not provide solace to Plaintiff. It is commonly known among Texas trial lawyers as the "mailbox rule." It states that service for a motion or pleading *on a party* is complete when the document is postpaid, properly addressed, and deposited in the mail or with a commercial mailing service. Tex. R. Civ. P. 21a(b)(1). RTSA was not a party and so Rule 21a is not applicable. The appropriate way to make RTSA a party was to serve it. *See Interest of T.M.E.*, 565 S.W.3d 383 (Tex. App.—Texarkana 2018, no pet.). Consequently, alleged compliance with Rule 21a would not be effective—even if it had contained all the materials required by law.

The Court finds that even if Plaintiff had an enforceable judgment and RTSA had been given all the constitutional protections to which it was entitled, Plaintiff did not comply with the wording or the spirit of the Texas Rules of Civil Procedure. Thus, the garnishment here is flawed.

### IV.   Relief

RTSA has in its Motion for Judgment on the Pleadings asked this Court to grant it a judgment on two independent grounds: (1) lack of subject matter jurisdiction; and (2) failure to state a claim. The first request is based, at least in part, upon the mistaken belief that this Court

had ruled that the state court lacked authority to "enter the order underlying Mr. Caballero's writ of garnishment." (Doc. No. 82 at 13). As stated earlier in this order, this Court clearly expressed its misgivings, but it did not hold that the state court lacked subject matter jurisdiction then and it does not now. A Texas state court has jurisdiction to register a federal court judgment and under certain circumstances has jurisdiction to enter orders to enforce that judgment—especially when that enforcement is directed at property located in Texas. *See* Tex. Civ. Prac. & Rem. Code Ann. § 35.001, § 35.003(c) (Vernon 2008); *BancorpSouth Bank v. Prevot*, 256 S.W.3d 719, 722 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (under the Uniform Enforcement of Foreign Judgments Act (UEFJA), filing a foreign judgment in a Texas court instantly creates an enforceable, final Texas judgment); *Counsel Financial Services, L.L.C. v. David McQuade Leibowitz, P.C.*, 311 S.W.3d 45, 50 (Tex. App.—San Antonio 2010, pet. denied); *Dear v. Russo*, 973 S.W.2d 445, 448 (Tex. App.—Dallas 1998, no pet.). [17]

RTSA then further argues that even if jurisdiction did exist, "the Attachment Action still would fail because Caballero neglected to follow the strict notice and service requirements that Texas requires to obtain jurisdiction over the res in the first instance." (Doc. No. 82 at 13). It goes on to argue that RTSA cannot be equated to FARC. Finally, RTSA claims that because FARC has been de-designated by the State Department or the Treasury Department, it cannot be held liable.

In his response, Caballero not surprisingly disagrees and argues that not only did the state court have jurisdiction, but also that the latter part of RTSA's motion is procedurally infirm in that

---

[17] This Court has studied in depth the question of whether it can vacate the agent and instrumentality finding in the Registration Action. It considers that finding to be in error and to be voidable for all the reasons set out in the text. In considering the possible options to remedy this problem, this Court has also given some consideration as to whether issues of comity or abstention—such as the *Rooker-Feldman* doctrine—would counsel against any intervention by this Court. *See e.g., Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). While it found that neither doctrine put up an impenetrable barrier, this Court remains convinced that, as a court of limited jurisdiction, it has no jurisdiction to address that finding because the Registration Action was not removed to this Court. Consequently, while it seems clear that the finding is voidable—given the lack of specificity in the underlying judgment and the due process concerns surrounding the finding's creation—this Court cannot in this action address it.

its arguments about its status vis-à-vis FARC are replete with factual issues that require either a finder of fact or, at the very least, a Rule 56 motion for summary judgment to resolve. Clearly, if one needed to evaluate RTSA's role and how it should be characterized that analysis would involve competing factual scenarios and Plaintiff is correct that this motion for judgment on the pleadings is not the proper vehicle by which to reach such a resolution.

This Court, however, grants RTSA's Motion for Judgment on the Pleadings and for failure to state a claim upon which relief can be granted. According to Plaintiff's pleadings, both lawsuits (the Registration Action and the subsequent Attachment Action—the latter of which is before this Court) are predicated on a valid final judgment against FARC. Consequently, if there is no valid monetary judgment against FARC, one cannot obtain writs of attachments against its agents or instrumentalities. This Court finds there is no valid judgment against FARC. [18]

This Court further finds, due to the various infirmities discussed above, that both writs of garnishments based upon this purported judgment against FARC are hereby null and void and dissolved. This ruling is based upon the fact that RTSA was not afforded all of its rights guaranteed by the Constitution of the United States and Texas and that Plaintiff did not comply with Texas law in the manner in which he obtained the writs and the manner in which they were "served." Also, for the reasons discussed above, the Court finds the order finding RTSA to be an agent or instrumentality of FARC filed in the Attachment Action to be unenforceable here.

This Court, as a matter of law, grants RTSA's Motion for Judgment on the Pleadings. (Doc. No. 82).

---

[18] The Court understands that both sides may want to brief this holding in more depth as this issue was not addressed in the last hearing. This Court gives Plaintiff ten (10) days to file a motion for rehearing on this issue if he so chooses. If such a motion is filed, RTSA (and Vitol, if it wishes) has ten (10) days to respond. If filed, the Court will not enter its final judgment as required by Rule 58 until it considers these briefs.

## V.     Conclusion

For the foregoing reasons, the Court hereby **GRANTS** RTSA's Motion for Judgment on the Pleadings with prejudice. (Doc. No. 82). The writs of garnishment issued by the state court in the Attachment Action are hereby found to be **VOID** and are hereby **VACATED**. The Court **DENIES** the request to vacate any order in the Registration Action as this Court finds it is without jurisdiction to do so.

Signed at Houston, Texas, this _6_ day of January, 2023.

Andrew S. Hanen
United States District Judge